BROS, INCORPORATED, Appellant,

v.

W. E. GRACE MANUFACTURING COMPANY, and William E. Grace, Appellees.

W. E. GRACE MANUFACTURING COMPANY, and William E. Grace, Appellants,

v.

BROS, INCORPORATED, Appellee.

No. 17194.

United States Court of Appeals Fifth Circuit.

Nov. 26, 1958.

Andrew E. Carlsen, Minneapolis, Minn., Joseph H. Schley, Dallas, Tex., Douglas L. Carlsen, Minneapolis, Minn., for plaintiff-appellant, Schley & Schley, Dallas, Tex., of counsel.

Howard E. Moore, Dallas, Tex., for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Unlike most patent appeals which range the broad spectrum of limitless charge and countercharge, this one presents two narrow questions, each primarily procedural in nature. The first is whether summary judgment for the Patentee against the defendant Infringers could be entered on the basis of a prior judgment in an Ohio suit. If so, the second question is whether the Court in that summary judgment could deny an accounting for damages.

The Patentee, owner of Bros patent 2,610,557 covering improvements in a pneumatic roller compactor, filed this traditional patent infringement suit in Dallas in December 1957 against William E. Grace Manufacturing Company and William E. Grace, its president, individually. After formal Answer which put in issue validity, infringement and damages, the Patentee moved for summary judgment based on a judgment rendered by the United States District Court for the Northern District of Ohio in a suit by Patentee against Gibson-Stewart Company (Inc.), an Ohio distributor of Grace's machines. On the basis of this motion and the supporting and counter affidavits, the Court below granted this summary judgment on the ground that the Graces, corporate and individual, had actually controlled and directed the defense of the Ohio suit, were in privity with the nominal defendant, and were therefore bound by it on familiar principles of *res judicata.*

The correctness of that action turns on two things. The first is the substantive principles of *res judicata,* the second is the adequacy of the moving papers to demonstrate that as to such principles there was no genuine issue of fact, F.R. Civ.P. 56(c), 28 U.S.C.A.

■ On the first, there is really no controversy between the parties. While the mere payment of counsel fees or participation in a trial by one not a named party to it would not alone be sufficient, cf. I. T. S. Rubber Co. v. Essex Rubber Co., 1926, 272 U.S. 429, 47 S.Ct. 136, 71 L.Ed. 335, Restatement, Judgments § 84, comment *e* (1942), the extent and nature of that participation may completely alter the consequences. This is particularly so in patent infringement cases in which, from tactical or strategic considerations relating to venue, desirability of a particular forum and the like, such cases are so often filed and tried against a dealer, a seller, a distributor, or a user of the accused device manufactured by another. If the manufacturer stands aloof, he risks a judgment adverse to his interest resulting perhaps from inadequate or incompetent defense by one who has a secondary interest. Such judgment, to be sure, would normally not be binding by estoppel or *res judicata,* but it would take its place in the jurisprudence where its practical effect as stare decisis might be as decisive. The alternative, of course, is to jump in and give the case full and active defense as though the manufacturer were the real named party. This assures that the issues will be presented and contested in a way deemed most effective by the nominally remote, but practically immediate, party at interest.

■ Where that course is followed and the non-party actively and avowedly conducts the defense, manages and directs the progress of the trial at its expense and under its supervision, the outcome, which if favorable would have redounded to his benefit, if adverse becomes sauce for goose and gander alike, and binding under principles of *res judicata.* Minneapolis-Honeywell Regulator Co. v. Thermoco, Inc., 2 Cir., 1941, 116 F.2d 845; Nash Motors Co. v. Swan Carburetor Co., 4 Cir., 1939, 105 F.2d 305; Warford Corp. v. Bryan Screw

Machine Products Co., 6 Cir., 1930, 44 F.2d 713; N. O. Nelson Manufacturing Co. v. F. E. Myers & Bro. Co., 6 Cir., 1928, 25 F.2d 659; Beyer Co. v. Fleischmann Co., 6 Cir., 1926, 15 F.2d 465; Restatement, Judgments § 84, comment *b*, illustration 4 (1942).

On these accepted principles was there a showing that there was no genuine dispute as to the activities of the Graces, corporate and individual, in the Ohio suit? We think there was.

The supporting affidavit, carefully constructed in separate numbered paragraphs free, at least so far as this issue was concerned, of conclusional argumentation, cf. Inglett & Co. v. Everglades Fertilizer Co., 5 Cir., 1958, 255 F.2d 342, sets out the precise facts concerning the Ohio suit. The Ohio suit was filed by Patentee on June 24, 1954, against Gibson-Stewart Company (Inc.). It was the distributor of W. E. Grace Manufacturing Company, and as such had sold one or more accused machines known as "Grace 50 Ton pneumatic rollers" manufactured by Grace and described by particular trade names in its catalogues and advertisements. This suit was tried in 1957. The affidavit expressly authenticated a copy of the oral opinion of Chief Judge Paul Jones as well as the subsequent formal judgment[1] of December 16, 1957.

And then, of crucial importance here, the affidavit set forth several specific occurrences which, as thus established, showed[2] that the defense of the Ohio

---

[1] The judgment in categorical terms decreed in effect:

1. That it had jurisdiction of the subject matter and parties;

2. That the plaintiff, Bros Incorporated, is the owner of Bros patent 2,610,-557, and has all rights to the recovery of damages and profits for infringement thereof;

3. That the four claims of the patent are good and valid in law;

4. That defendant, Gibson-Stewart Co. had infringed all of said four claims, by selling the Grace 50 Ton Soil Compaction Rollers manufactured by (present defendant) W. E. Grace Manufacturing Company of Dallas, Texas;

5. That the defendant (Gibson-Stewart) be permanently enjoined from further infringing;

6. That plaintiff recover full damages through a proper accounting; and

7. That plaintiff recover from defendant costs to be taxed.

[2] The affidavit stated:

"11. In answer to an interrogatory, in the Cleveland case, defendant's counsel stated that 'W. E. Grace Manufacturing Company completely controls and directs the defense of this suit and pays all of the expenses.'

"12. On August 23, 1954, a Notice of Infringement (dated August 19, 1954) was served by Registered Mail on W. E. Grace Manufacturing Co., charging it with infringement of the Bros patent, and a true copy of such Notice is appended hereto, as Affidavit Exhibit 'D'. Such Notice was acknowledged by Mr. Frank E. Liverance, a patent lawyer in Grand Rapids, Michigan, who replied, in part, as follows:

" 'Your letter of the 19th to W. E. Grace Mfg. Co. of Dallas, Texas, has been forwarded to me.

" 'The W. E. Grace Company has assumed control of the suit brought by William Bros Boiler & Mfg. Co. alleging infringement of patent No. 2,610,557, and against Gibson-Stewart Company of Cleveland, which latter company is a distributor of products of the Grace Company. The outcome of such suit in Cleveland will be controlling as to the plaintiff therein, your client, and as to W. E. Grace Mfg. Company who is my client, under the principles of res adjudicata.'

"13. Mr. W. E. Grace testified for defendant at the Cleveland trial, and the defense was entirely conducted by Mr. Cecil L. Wood, of Dallas, Texas, who entered his appearance therein on April 26, 1957, and who also stated, at the close of the trial, that the manufacturer, W. E. Grace Manufacturing Co. 'is Mr. Grace's company—He, individually, owns the company, he is the manufacturer.'

"14. During the trial, and as found on page 34 of the Transcript of Evidence thereof, Mr. Wood stated 'Your Honor, I represent W. E. Grace. The defendant in this case, Gibson-Stewart Company, are dealers, you see, and Mr. Grace has assumed the responsibility of prosecuting this matter in their behalf.'

"15. The foregoing admission was confirmed by the trial Court, Chief Judge Jones in his Oral Opinion (Affidavit Exhibit 'B', page 4), wherein he stated 'Now that was recognized by Mr. Grace, repre-

suit had been taken over lock, stock and barrel by both of the Graces, corporate and individual. These statements were positive, direct and factual in nature. They were not mere charges or assertions or conclusions. They called for specific and equally direct answers.

But this defendants did not undertake to do. Their counter affidavit was almost exclusively preoccupied with the intrinsic merits of the case—the validity of the patent, infringement by the defendants' machines, prior art, anticipation and the like. On such issues it attempted to set forth factual reasons why the Ohio judgment was not correctly decided and why it was necessary to allow defendants fully to develop such matters in the Dallas suit. This was especially so since the Ohio judgment, although not superseded, was then on appeal to the United States Court of Appeals for the Sixth Circuit where, it was claimed, the likelihood was that it would be reversed.

The counter affidavit did not, for example, even attempt to deny the accuracy or plain meaning of the answer to the interrogatory (paragraph 11), the authenticity of counsel's letter (paragraph 12), his authority to write it in their behalf, the meaning or significance of it, the authenticity of the positive representations of Grace's counsel in open court (paragraph 14), or its actual meaning and significance if quoted out of context. See note 2, supra. All the counter affidavit did was to lump all of these together and deny, not the facts, but their legal sufficiency[3] in the most general terms.

Moreover, the balance of the counter affidavit made doubly clear that Paragraph III (note 3, supra) was not a challenge of the underlying facts on *res judicata* set forth in note 2, supra. For in the succeeding paragraph IV, it spelled out that " * * * There are genuine issues of fact to be determined in this cause * * * said issues of fact being as follows * * * ." Then followed subparagraphs (a) through (c), all of which referred to the merits of the suit, the validity of the patent and infringement. In both an affirmative and negative way the counter affidavit was deficient as a challenge to the assertion that there was no real controversy of fact.

Summary judgment is a marvelous instrument in expediting the administration of justice. It is the means by which causes or defenses with no real merit are weeded out without the hazard of a decision on an artificial situation described by artful pleadings, or without the cost in precious judicial time of a long protracted trial which ends with a determination that, on the facts viewed most favorably to a party, the claim or defense is not good as a matter of law. Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690; Millet v. Godchaux Sugars, Inc., 5 Cir., 1957, 241 F.2d 264.

■■ As might be expected of anything so useful, there is a definite condition on its availability, a restriction on its use. No matter how enticing, it cannot short circuit a trial by judge or jury of fact questions if they are really in the case. If, on the moving papers alone or on them in conjunction with the coun-

---

senting the defendant here in the defense of the suit, in the fact that he did actually copy the plaintiff's structure.'

"16. Again, on page 7 of the Oral Opinion by Judge Jones, the following colloquy took place.

" 'The Court:

" 'I understand the defendant is a distributor, not the manufacturer.

" 'Mr. Carlsen:

" 'That is correct.

" 'Mr. Wood:

" 'Yes, it is Mr. Grace's company.

" 'The Court:

" 'Is it the company or the individual?

" 'Mr. Wood:

" 'It is the company. He, individually owns the company; he is the manufacturer.' "

3. Paragraph III of the counter affidavit stated:

"Defendants W. E. Grace Manufacturing Company and William E. Grace, were not parties to said Ohio suit, and the decision and judgment in said cause is not binding on the Defendants."

ter affidavits it is shown that there actually is a genuine dispute of a significant fact, Inglett & Co. v. Everglades Fertilizer Co., 5 Cir., 1958, 255 F.2d 342, 348, or there is a serious and substantial doubt about it, Heyward v. Public Housing Administration, 5 Cir., 1956, 238 F.2d 689, 696, summary judgment must be denied. But if, on the other hand, there is, by a presentation of factual evidentiary details having the substantial characteristics of receivable evidence as compared with conclusions, a convincing showing that no real genuine controversy on the decisive fact exists, a mere formal denial is but a pretended one, and is insufficient. In that situation the respondent must come forward with facts of his own. Bruce Construction Corp. v. United States, for Use of Westinghouse Electric Supply Co., 5 Cir., 1957, 242 F.2d 873. These mutual principles assure both the fullest utility to this procedural device while keeping it from ever becoming a mere wager of affidavits, a compurgation by the most paper swearers.

Paragraph III of the counter affidavit was a pretended denial. In this context it left the recited details, note 2, supra, without dispute. Nor did these details carry their own seeds of controversy. Completely unchallenged stood the decisive facts that the Graces, corporate and individual, had controlled the Ohio suit.

■ Summary judgment on *res judicata*[4] was certainly proper against the corporation and equally was it so against Grace individually because of his individual activities as the person through whom the corporation was acting. Moseley v. United States Appliance Corp., 9 Cir., 1946, 155 F.2d 25; Dean Rubber Manufacturing Co. v. Killian, 8 Cir., 1939, 106 F.2d 316, 320; Southwestern Tool Co. v. Hughes Tool Co., 10 Cir., 1938, 98 F.2d 42; General Electric Co. v. Wabash Appliance Corp., 2 Cir., 1938, 93 F.2d 671, 674; Cugley v. Bundy Incubator Co., 6 Cir., 1937, 93 F.2d 932, 935.

■ On the second question the Court was clearly wrong in denying an accounting either before the Court or by a reference to a Master. Indeed, the defendant as much as conceded this by the approval as to form of the proposed decree, Paragraph 6 of which provided for the usual reference. Approval as to form, of course, carries generally no agreement on substance. But here there was no objection of any kind made by defendants to the proposition that ascertainment of damages by some means was required, and both parties were equally surprised when Paragraph 6 was stricken out by the District Judge without explanation or reason of any kind. On a finding of validity and infringement, the Statute, 35 U.S.C.A. § 284, and the case law, Livesay Industries, Inc., v. Livesay Window Co., 5 Cir., 1953, 202 F.2d 378; Middleton v. Wiley, 8 Cir., 1952, 195 F.2d 844; Laskowitz v. Marie Designer, Inc., D.C.S.D.Cal.1954, 119 F.Supp. 541, 554; Switzer Bros., Inc., v. Centennial Liquor Stores, 5 Cir., 1951, 186 F.2d 414, entitle the Patentee to damages. The Court was required, therefore, to provide in its judgment the means for determination of damages by Court or Master as appropriate.

The summary judgment must be reformed accordingly, but as reformed it is affirmed. The cause is remanded for

4. The fact that, without superseding the Ohio judgment, appeal has been taken and now pends before the Sixth Circuit is immaterial. That judgment until reversed is enforceable. Slade v. Dickinson, D.C.W.D.Mich.1949, 82 F.Supp. 416, 418, 419. This Dallas suit was against the Graces, corporate and individual, to establish validity and infringement of the patent, and the Ohio judgment proceedings were subsequently imported into the Dallas suit to determine those issues. It was not a mere ancillary petition to enforce the Ohio judgment, which is not ripe for the streamlined extra-territorial enforcement machinery if an appeal is pending undetermined. 28 U.S.C.A. § 1963; and see Hanes Supply Co. v. Valley Evaporating Co., 5 Cir., 261 F.2d 29 [2d paragraph of opinion].

trial on the accounting phase and for such further and other consistent proceedings as may be required.

Judgment reformed, and as reformed affirmed and remanded.