Milton M. Wecht, J.
This litigation arises with respect to some property owned by the defendant in the area known as Mill Basin. All of the property in this area was originally owned by Atlantic Gulf and Pacific Company (hereinafter referred to for brevity as Atlantic). Some of this property was conveyed to Flatbnsh Park Homes, Inc. On September 20, 1950 when all of this property was owned by both the Atlantic and Flatbnsh Park, these corporations entered into an agreement with the city which, among other items, provided that:
(1) The city would adopt a new city map which would modify the existing city map by removing therefrom parts of certain streets previously shown thereon.
(2) The corporations would (a) grant the city certain sewer easements; (b) indemnify the city against claims arising out of elimination of certain streets or portions thereof; (c) cede to the city — East 64th Street from Strickland Avenue to National Drive together with certain parcels of land for sewer purposes; and (d) improve said streets with temporary pavement — to be approved by the President of the Borough of Brooklyn and constructed under his supervision.
(3) Upon completion of said work, the city would accept a deed of cession to said streets.
After this agreement was entered into, some of this land was conveyed to Shoreview Gardens, which conveyed the property on East 64th Street including the street to the defendant herein on various dates between March and December of 1960. The city never claimed ownership of this street and it is concededly part of the private property acquired by this defendant. After acquiring title, the defendant started to construct 72 houses on its property, many of which were built on both sides of the dirt road known as East 64th Street. As these houses were sold and occupied, the defendant started to improve this dirt road. The length of this road is 875 feet and 6 inches and the defendant had already laid a temporary pavement on 641 feet and nine inches of it, when it was notified on March 1, 1962 by the engineer from the Borough President’s office to stop further work until it received permission and authority from the Borough President in spite of the fact that 75% of the streets in the Mill Basin area had already been paved without securing permission from the Borough President and without objection by plaintiff. On May 18, 1962 the defendant, through its attorneys, notified the Borough President that it would *706 resume the paving on May 24, since the street was private property, over which only the owners had jurisdiction and not the city. On May 25,1962 the city commenced an action against the defendant for an injunction to prohibit it from completing the paving without permission from the Borough President and cited as its authority the agreement of September 20, 1950 hereinbefore referred to. Simultaneously with the service of the summons and complaint in this action for an injunction, the city served the defendant with a notice of motion for a temporary injunction, pending a determination of the action at a trial. It is this motion which is now before the court for decision as well as a cross motion of the defendant to dismiss the complaint for failure to set forth a good cause of action.
It is the contention of the city (1) that the defendant owner is a ££ successor in interest ” to Atlantic and to Flatbush Park Homes, Inc., and as such is bound by the terms of the agreement between the said corporations and the city; (2) that the city is responsible for proper maintenance of all its streets and therefore has the duty to see that they are properly constructed, and lastly, (3) since the deed conveying the property to the defendant contained a clause which gave notice to the grantee of the existence of the agreement in question, the grantee is bound by such notice and must comply with it.
The defendant responds to these arguments and denies that it is a <£ successor in interest ” to the corporations which signed the agreement in question; that the street in dispute is private property over which the city has no control and that even though the deed of conveyance to it contained notice of the agreement in dispute, such notice constitutes an £ 1 affirmative covenant ”, does not run with the land and is not binding on it.
In order to be a ££ successor in interest ”, a party must continue to retain the same rights as the original owner without a change in ownership. There must be a change in form only and not in substance. It does not include a transfer from one party to another (Northrop v. Smith, 9 N. Y. S. 802, 803). In the case of corporations, the term ££ successor in interest” ordinarily indicates statutory succession (Automatic Strapping Mach. Co. v. Twisted Wire & Steel Co., 159 App. Div. 656, 659) as, for instance, when the corporation changes its name but retains the same property. Here there was not even a transfer from either of the contracting parties to the defendant, for one of the corporations, Flatbush Park Homes, Inc., was dissolved in 1953, about seven years before the defendant even acquired *707 title in 1960. The city endeavors to apply the terms “ successor in interest ”, and “ successor in title” as having the same meaning, hut cites no law to support this claim. As a matter of fact, it recognizes the difference between these two terms, when it now moves, in this motion, to amend the original complaint, third paragraph, by striking therefrom the allegation that the “ defendant * * * is the successor in interest to Flatbush Park Homes, Inc.” Even if this motion were granted, the final decision in this matter would not be changed.
We now come to the second point. Does the city have control over the streets in question? Sight must not be lost of the fact that this whole Mill Basin area was private property. Parts of it were sold to various developers. These developers constructed and sold houses in their private developments and laid out streets on this private property. The very fact that the agreement of 1950 was entered into, indicates clearly an acknowledgement by the city that some day the city hoped to acquire title to these streets, but until then they did not belong to the city. Of course, the city ‘ ‘ has a vital interest in behalf of the public to see that all streets are safe means of travel ”, but this applies only to public and not private streets. The very definition of the word, “ Street ” as given in subdivision 14 of section 981-1.0 of the Administrative Code of the City of New York refers only to “public street”. Nor can section 36 of the General City Law have any application, because that section refers to permits for the erection of buildings on suitably improved streets, but permits have long since been issued for the construction of all the 72 houses and certificates of occupancy have already been issued for 52 of the houses, 50 of which have been sold and 47 of which are now occupied by home owners.
It is the contention of the city that if for no other reason, the temporary injunction in this matter should be granted, because every deed to any of this property, including the deed to this defendant, incorporated a clause giving notice to the grantee of the existence of the September, 1950 agreement, which notice bound this defendant to its obligations. This defendant, however, denies this obligation on the ground that, if anything, the agreement constitutes an “ affirmative covenant ” as distinguished from a “negative covenant ”, which “ affirmative covenant ” does not run with the land and is not binding on this defendant.
These terms have different meanings. A “ negative covenant ” is one which prohibits the owner of a servient estate, which is the defendant herein, from doing something on his property which is lawful, but would adversely affect the dominant estate. Such *708 a provision can be enforced by injunction. On the other hand, an “ affirmative covenant” is an agreement where the covenantor, the defendant herein, undertakes that something shall be done, a breach of which is not subject to enforcement by injunction. The law on this subject was discussed fully in Miller v. Clary (210 N. Y. 127) when it said: “ The covenant to construct * * * is known in the law as an affirmative or positive covenant. It compels the covenantor to submit not merely to some restriction in the use of his property, but compels him to do an act thereon for the benefit of the owner of the dominant estate (p. 132) * * * I think the rule that affirmative covenants accompanying conveyances of land are not enforceable against subsequent owners is a wise one ” (p. 136). This case was followed by the case of Guaranty Trust Co. v. New York & Queens County Ry. Co. (253 N. Y. 190, 204) which reiterated the rule in this language: “ Subject to a few exceptions [not applicable in this case] there is now in this State, a settled rule of law that a covenant to do an affirmative act, as distinguished from a covenant merely negative in effect, does not run with the land so as to charge the burden of performance on a subsequent grantee. ’7 That the defendant herein is a subsequent grantee, there is no doubt. The Court of Appeals in these two leading cases has held in no uncertain language that an “ affirmative covenant ” cannot be enforced against a subsequent owner.
While, under the authorities hereinabove quoted, the agreement of 1950 would constitute an “ affirmative covenant ” it is really immaterial, for our discussion, whether it be an “ affirmative ” or 11 negative ’ ’ covenant since the city was at no time the owner of any of the land which would benefit by enforcement of the agreement. It was so held in Neponsit Property Owners Assn. v. Emigrant Ind. Sav. Bank (278 N. Y. 248, 261), where the court said: “ [N]o right to enforce even a restrictive covenant has been sustained in this state where the plaintiff did not own property which would benefit by such enforcement ”. (See, also, Nicholson v. 300 Broadway Realty Corp., 7 N Y 2d 240.)
It must not be overlooked that at no time did the city attempt to acquire title to these streets by condemnation or otherwise, and since this property has always remained in private ownership, the city cannot prevent the defendant from proceeding with the work it has undertaken. The motion for an injunction is denied.
It is evident from the papers submitted that the city is not an owner of any portion of the property within this area. The complaint is dismissed. (Neponsit and Nicholson cases, supra.)