Bertram Harnett, J.
A filling station owner agrees to purchase all his gasoline products requirements from a single oil *315 company or its distributors. May that agreement, if recorded in the .real estate records of the County Clerk, impose itself automatically upon subsequent owners who do not assume it? The question is a novel one in New York.
On February 10, 1965, Linmont Properties Inc. (Linmont) purchased and was deeded a corner lot from Newman, Nager and Wolf (NN&W), who were individual distributors of American Oil Company (Amoco) products, in order to construct and operate a filling station. A “ requirements ” agreement between Linmont and NN&W was also executed and duly recorded in the Nassau County Clerk’s office on February 15, 1965. It provided that Linmont and subsequent owners, as well as tenants, would agree to purchase all of their requirements for petroleum products through NN&W or their designee. A station was then built, leased and operated under the terms of that requirements contract. In August, 1971, Chock Full of Power Gasoline Corp. (Chock Full) purchased the property from Linmont, and entered into possession and operation, without assuming the requirements contract. It refused to comply with the agreement, claiming that Amoco’s tank wagon prices were too high.
Plaintiffs, as successors to NN&W’s designee for distribution of Amoco products, bring this action to enforce the requirements agreement as a covenant running with the land against Chock Full. Both sides move for summary judgment pursuant to CPLB 3211 and 3212.
Under pertinent paragraphs of the requirements agreement, Linmont and “ any subsequent owner, tenant, subtenant or occupant of said premises * * * covenants and agrees ” that they:
(1) “ will not, and will not permit anyone else to, store, handle, sell, offer for sale, advertise for sale, use or permit to be used upon the premises, or any part thereof, or adjacent thereto, any gasoline, oil or other petroleum products other than those supplied by [NN&W], its successors, assigns or designees
(2) “will purchase or acquire from [NN&W, its successors, assigns or designees] all of [Linmont and its successors’] requirements of gasoline, oil or other petroleum products which are, or are to be stored, handled, sold, offered for sale, advertised for sale, or used upon the premises or any part thereof, or adjacent thereto ”.
(3) “ will actively conduct or cause to be conducted a gasoline service station on said premises ”.
*316 (4) “ will enter into a Dealer’s Sales Agreement and Equipment Loan Agreement as required by the American Oil Company
The agreement provided for termination after 10 years or 1 ‘ sooner in accordance with any written instrument between the parties ’ ’. On October 19,1965, sales and equipment loan agreements were executed by Linmont’s tenant, Bill’s Service Station. Their terms reiterated the requirements provisions at a stated minimum gallonage per delivery, identified the equipment loaned by Amoco, and further expressly permitted termination before the completion of the 10-year period, this time, by either party upon at least thirty days’ notice.
Realty covenants fall into two general categories, ‘ ‘ negative ”, meaning those which prohibit the owner from doing something on his property, and “ affirmative ”, by which the owner undertakes to do some positive act. (13 N. Y. Jur., Covenants and Restrictions, § 12, 1972 Cum. Supp., p. 31; City of New York v. Turnpike Development Corp., 36 Misc 2d 704.) While the covenant here prohibited Linmont and subsequent takers from buying products other than through Amoco distributors, its thrust was to mandate positive acts: the operation of a filling station, execution of further agreements, and purchase of requirements from Amoco distributors. As such, the agreement plainly falls within the ambit of covenants described as “ affirmative ”.
The general rule in New York is that an affirmative covenant does not run with the land and is unenforceable as against subsequent owners who do not assume it. (Miller v. Clary, 210 N. Y. 127, 132; Guaranty Trust Co. v. New York & Queens County Ry. Co., 253 N. Y. 190; Scott v. McMillan, 76 N. Y. 141; Neponsit Property Owners’ Assn. v. Emigrant Ind. Sav. Bank, 278 N. Y. 248. Cf. Nicholson v. 300 Broadway Realty Corp., 7 N Y 2d 240.)
Exceptions to the rule of nonenforceability of affirmative covenants are recognized where (1) the parties intend that the covenant should run with the land; (2) there is a continuous succession of conveyances between the original covenantor and the party now sought to be burdened; and (3) the covenant to a substantial degree “ touches ” or affects the essential nature of the land. (Miller v. Clary, supra; Nicholson v. 300 Broadway Realty Corp., supra, p. 245; Lawrence Park Realty Co. v. Crichton, 218 App. Div. 374; Tarantelli v. Tripp Lake Estates, 63 Misc 2d 913.) Accordingly, covenants to build or repair fences (Moxley v. New Jersey & N. Y. R. R. Co., 143 N. Y. 649; Concklin *317 v. New York Cent. & Hudson Riv. R. R. Co., 149 App. Div. 739; Corwin v. New-York & Erie R. R. Co., 13 N. Y. 42); to observe riparian obligations (Adirondack Power & Light Corp. v. City of Little Falls, 148 Misc. 191); to provide railway-crossings (Post v. West Shore R. R. Co., 123 N. Y. 580); or to make repairs to buildings or fixtures (Greenfarb v. R.S.K. Realty Corp., 256 N. Y. 130; Clemente Bros. v. Peterson-Ashton Fuels, 29 A D 2d 908; Morehouse v. Woodruff, 218 N. Y. 494; Nye v. Hoyle, 120 N. Y. 195) may be imposed upon successive owners.
The mere fact that the covenant was recorded, as here, does not make it run with the land. (Morgan Lake Co. v. New York New Haven, & Hartford R. R., 262 N. Y. 234, 238.) While ordinary recordation of outstanding liens or defects in title on real property may give constructive notice to subsequent owners, the imposition of an affirmative covenant as an obligation is not accomplished so easily and can only be found if all three exceptional factors are present.
No magic formula exists to indicate whether a particular affirmative covenant falls within the stated exception. The effect and substance of each covenant must be examined to determine the presence or absence of the necessary factors. (Neponsit Property Owners’ Assn. v. Emigrant Ind. Sav. Bank, supra; Nicholson v. 300 Broadway Realty Gorp., supra; Tarantelli v. Tripp Lake Estates, 23 A D 2d 905; 5 Powell, Real Property, p. 184.)
There is no dispute that the original covenantor, Linmont, after six years of owning the property and buying Amoco products, conveyed directly to Chock Pull, now sought to be burdened with the covenant. However, it is not clear that, in the first instance, NN&W and Linmont intended to make the covenant 11 run with the land ’ ’ for 10 years or any other period. While the language of the agreement encompasses subsequent owners of the property, the requirements contract by its express terms contemplates earlier termination by any written agreement between the original parties, before completion of the 10-year period. More to the point, the equipment loan and sales agreement, subsequently executed and purporting to bind the filling station operator to buy Amoco products for 10 years, by its own terms, could be terminated by either party upon 30 days’ notice. If the equipment loan and sales agreement fell, the requirements agreement could not likely endure. On the whole, the intended duration and immutability of the requirements agreement are elusive.
*318 In the final analysis, the covenant is not enforceable since the requisite “touching” of the land by the sought covenant is not established. (Neponsit Property Owners’ Assn. v. Emigrant Ind. Sav. Bank, supra.) The covenant must relate to the essential character of the property. The cases finding enforceability, cited above (Moxley v. New Jersey & N. Y. R. R. Co., supra, et al) all involve some physical thing to be done to the realty, or some act to protect the land from some kind of delinquency. The requirements agreement in this case does not relate to the essential appearance, safety, maintenance, improvement, or usefulness of the land in any respect. The restriction of products sold to one brand, or to those provided by distributors of that brand, is irrelevant to the land. The conceivable “touch” here is solely one of internal commercial usage. As far as the land (the plot itself or the surrounding parcels) is concerned, it makes little difference whose gasoline products are sold. The name on the gasoline pump is not essential to the land, certainly not in the sense that, for example, a fence or landscaping may be.
Moreover, the requirements agreement does not touch and concern the land because it does not affect the legal relations of tjie parties to the coyenant “ as owners of particular parcels of land ” (Nicholson v. 300 Broadway Realty Corp., 7 N Y 2d 240, 246, supra [upholding enforceability of agreement by one landowner to supply heat to the adjoining parcel]).
Interestingly, the rules governing restrictive covenants generally encompass the requirement that the party seeking to enforce the covenant own, or bear suitable relationship to the owners of property nearby. Three classes of restricted covenants are enforceable according to the Court of Appeals. These include covenants “ [1] entered into with the design to carry out a general scheme for the improvement or development of real property * * * as building schemes, under which an owner of a large plot or tract of land divides it into building lots * * * [and] entered into by the grantees for their mutual protection and benefit * * * [2] in which the grantor exacts the covenant from his grantee, presumptively or actually, for the benefit and protection of contiguous or neighboring lands which the former retains [and] [3] where there are mutual covenants between owners of adjoining lands in which the restrictions placed upon each produce a corresponding benefit to the other”. (Korn v. Campbell, 192 N. Y. 490, 495-496; Steinmann v. Silverman, 14 N Y 2d 243; *319 cf. Pagano v. Kramer, 25 A D 2d 887, affd. 21 N Y 2d 910; Dubrowsky v. Benedict, 67 Misc 2d 189.)
Since the requirements agreement does not fall into any of these categories, it can in no event be enforced against Chock Full as a covenant running with the land. Neither NN&W, the covenantee in 1965, nor plaintiffs, Bill Wolf Pertoleum Corp. and Estron Oil Corp., the two corporate entities assuming the rights of NN&W’s designee, own real property adjacent or near to the filling station realty. They do not even hold the mortgage on the subject property. As far as the land is concerned, they are outsiders and therefore lack the proximate interest or neighborhood nexus. There is no common scheme or mutuality between adjoining owners. While the requirements agreement may be limited in duration (and in that respect, a lesser restriction or alienation), that factor is not a substitute for the requisite community mutuality. (Cf. Nicholson v. 300 Broadway Realty Corp., 7 N Y 2d 240. 246.)
It is not legally material to plaintiffs ’ theory of liability that Chock Full may have known of Linmont’s requirements agreement. The question is whether the agreement so embraces the land that Chock Full is necessarily bound by it. In a sense it seems immoral for a party to be able to evade an obligation it may have squarely confronted in making its bargain. (See Hodge v. Sloan, 107 N. Y. 244.) Perhaps the plaintiffs can yet support a legal theory of equitable thrust apart from the rules of enforceable covenants. Yet the law is replete with governing standards which, for policy reasons broader than a specific case, may work particularized harshness. Consider in comparison, the hardships which may result from agreements unenforceable because they are oral, or against public policy, or barred by a Statute of Limitations. Moreover, in this ease, the general principle in favor of freedom of alienation, Matter of Mazzone (Hjorth) (281 N. Y. 139, rearg. den. 281 N. Y. 671) puts a burden on one seeking to impose a covenant to bring himself squarely within the rules.
Moreover, the complexities of judicial enforcement of any given affirmative agreement must bear on the questions here. Court enforcement of an obligation to ‘ ‘ actively conduct ’ ’ a Service station is formidable enough. The difficulties of directing a grantee to enter into a “ Dealer’s Sales Agreement and Equipment Loan Agreement as required by the American Oil Company ”, with no standards or safeguards established, are more than a bit open-ended for the courts to compel.
*320 In all, there were other ample means to protect the economic results desired; the oil distributors chose not to employ them.
The court makes no finding as to the validity of the requirements covenant as a matter of public policy under the Donnelly Act (General Business Law, § 340), or the Sherman (U. S. Code, tit. 15, § 1 et seq.) or Clayton Anti Trust Acts (U. S. Code, tit. 15, § 14 et seq.) (see Standard Oil Co. v. United States, 337 U. S. 293; American Oil Co. v. Texaco, Inc., 37 Misc 2d 165; Samuel Adler, Inc. v. Bieler, 16 N Y 2d 688, 26 ALR 2d 219). The defenses pleaded do not assert these grounds; although Chock Full alternatively seeks leave to amend its answer to include these contentions, a ruling on that motipn is unnecessary since the agreement, whatever its inherent validity, is found not to run with the land.
Accordingly, summary judgment is granted in favor of Chock Full dismissing the complaint, and plaintiffs’ cross motion for summary judgment is denied.