■ BILL WOLF PETROLEUM CORP. et al., Appellants, v. CHOCK FULL OF POWER GASOLINE CORP., Respondent, and LINMONT PROPERTIES, INC., et al., Defendants.— In an action for a declaratory judgment, a mandatory injunction, etc., plaintiffs appeal from an order of the Supreme Court, Nassau County, dated July 31, 1972, which (1) granted the branch of a motion by defendant Chock Full of Power Gasoline Corp. which was to dismiss the complaint and (2) denied plaintiff's cross motion for summary judgment. Order modified by striking therefrom the second decretal paragraph, which granted said branch of said defendant's motion, and substituting therefor a provision denying such relief. As so modified, order affirmed, with $20 costs and disbursements to appellants. On February 10, 1965, defendant Linmont Properties, Inc., purchased a corner lot from Newman, Nager and Wolf (NN&W), who were individual distributors of American Oil Company (Amoco) products, in order to construct and operate a gasoline filling station. The lot was then already improved as such a station. Linmont, the owner of a parcel at the other corner of the same blockfront, separated from the NN&W lot by a depressed area owned by the Long Island State Park Commission, was desirous of building a gasoline station upon substantially the entire blockfront with the permission of the Park Commission. On February 10, 1965, Linmont and NN&W executed a "requirements" agreement which was duly recorded on February 15, 1965. Linmont therein agreed for itself and "any subsequent owner, tenant, subtenant or occupant" of the station to purchase all of their requirements of gasoline, oil and petroleum products through NN&W or its designee (Newtal), the products to be those of Amoco. The agreement provided for termination after 10 years "or sooner in accordance with any written agreement between the parties." By separate agreements, NN&W agreed to subordinate Linmont's purchase money mortgage of $32,369.57 to a mortgage to be given by Linmont to Amoco in the amount of $200,000 and Newtal agreed to pay Amoco $36,000 towards the cost of constructing the necessary underground gasoline storage tanks, with the payments to Amoco to be made in monthly installments of $300 over the 10-year life of the prime

agreement. Thereafter, a gasoline station was built, leased and operated under the terms of the requirements contract. In August, 1971 defendant Chock Full of Power Gasoline Corp. purchased the property from Linmont and entered into possession and operation of it, without assuming the requirements contract, with which it refused to comply. Plaintiffs, as successors to NN&W's designee (Newtal) for distribution of Amoco products, then brought this action to enforce the requirements agreement against Chock Full. In our opinion, Special Term erred in holding that the requirements agreement was not enforceable against Chock Full because the agreement did not strictly run with the land. The agreement was not only duly recorded but, more important, Chock Full purchased the premises with full knowledge of its terms, including the covenant binding all subsequent owners. Indeed, before consummating its purchase and denying the agreement's applicability to itself, Chock Full unsuccessfully sought its modification or termination. Although it dismissed the complaint, Special Term noted, at the same time, that "it seems immoral for a party to be able to evade an obligation it may have squarely confronted in making its bargain"; and it contemplated that perhaps plaintiffs could "yet support a legal theory of equitable thrust apart from the rules of enforceable covenants." We believe, however, that under the circumstances of this case, plaintiffs have set forth such a theory, since this requirements contract, which is of reasonable duration, constitutes an equitable obligation which is enforceable against Chock Full as a taker with actual notice. Shapiro, Acting P. J., Gulotta and Christ, JJ., concur; Brennan and Benjamin, JJ., dissent and vote to affirm, with the following memorandum: Defendant Chock Full of Power Gasoline Corp. is the owner of a gasoline station. The prior owner had entered into an agreement to buy all of its requirements for gas and oil from plaintiffs' assignors. The agreement provided that it was binding on subsequent owners of the station. It is conceded by Chock Full that it purchased the station with full knowledge of that agreement. The issue is whether the agreement may be enforced against Chock Full. There is no doubt that the requirements agreement is not a covenant running with the land. An enforceable covenant must relate to the use of the land. The agreement to buy all requirements of gasoline and oil relates only to the operation of the business and has no relation to the physical use of the land. The situation would be otherwise if the promise was to conduct a specific enterprise on the land. But a sole requirements contract does not touch or concern the land in any physical sense. The rationale for denying enforcement of this contract as a covenant running with the land is more than adequately set forth in the well-reasoned opinion at Special Term. And, apparently, the majority agrees with this view. Yet they would impose liability upon some undefined theory of equity, without support of any authority. In effect, they would enforce a nonenforceable covenant. An equitable burden may be imposed upon land even though there exists no covenant running therewith. But, in no event will such a burden be imposed unless there is another parcel of land which is receiving a reciprocal benefit arising therefrom.* There is absolutely no

---

* Enforcement of such a burden comes under the general doctrine of equitable servitudes. Under this doctrine, an agreement not otherwise running with the land may be enforced in equity as a servitude against the burdened land as to subsequent purchasers with notice (*Trustees* v. *Lynch,* 70 N. Y. 440). However, in every case in this jurisdiction in which the doctrine of equitable servitudes has been applied, the equitable incorporeal interest in the burdened land has been appurtenant to a dominant parcel of benefited land (e.g., *Lewis* v. *Gollner,* 129 N. Y. 227; *Hodge* v. *Sloan,* 107 N. Y. 244).

claim that the instant sole requirements contract operates to benefit any parcel of land, either owned by the promisees or by third parties. The contract is manifestly personal to plaintiffs' business. Even if there were some legal basis for the invocation of equitable principles in this case, we would decline to do so on the facts. The sole requirements contract in issue patently constituted an unreasonable restriction on the operation of the gasoline station. The price which Chock Full's predecessor was forced to pay for gasoline and oil under the contract caused it to suffer enormous operating losses. These losses were so great that the principal of Chock Full's predecessor (a corporation) had to obtain a mortgage on his own home, in Amoco's favor, in order to secure money due for gasoline purchases. It is uncontroverted that the continued operation of the gasoline station under the restrictions of the requirements contract would have resulted in bankruptcy of Chock Full's predecessor. We see no reason to allow equity to enforce such an onerous burden. [70 Misc 2d 314.]

---

No authority exists for enforcement of equitable servitudes where the reciprocal benefit is in gross (*Wilmurt* v. *McGrane*, 16 App. Div. 412). Although some authorities have criticized this result (see, e.g., 2 American Law of Property, § 9.32), the minority view represented by this criticism finds no support in New York law or the law of most States. The reason for this is evident. Where there is no gain to a dominant parcel of land, enforcement of a burden creates a situation directly adverse to the paramount policy which favors free alienability and maximum utility of land (see 5 Restatement, Property, ch. 45, introductory note).