**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**ARCADIA MARINE, INC. and Juan C. Villanueva, Defendants.**

**No. 84 CIV. 8280 (PKL).**

United States District Court, S.D. New York.

Sept. 10, 1986.

Atkinson, Dean & Dana, New York City, for plaintiff; William J. Dean, of counsel.

Levine, Hoffman & Crispo, New York City, for defendants; Pasquale J. Crispo, of counsel.

## OPINION AND ORDER

LEISURE, District Judge:

Plaintiff, the Federal Deposit Insurance Corporation ("FDIC") has brought suit against defendants Arcadia Marine, Inc. ("Arcadia") and its President, Juan Villanueva ("Villanueva"), to secure repayment of the balance of a loan made to Arcadia by the Pan American National Bank ("Pan Am Bank") and guaranteed by Villanueva. This Court has subject matter jurisdiction over plaintiff's action pursuant to 12 U.S.C. § 1819 and 28 U.S.C. § 1345.

On November 12, 1982, defendant Arcadia executed an installment loan note (the "Note") in the amount of $83,766 (including $23,766 in finance charges), payable to Pan Am Bank. On that same date, defendant Villanueva became guarantor of Arcadia's obligations to Pan Am Bank by executing a "Guarantee of All Liability and Security Agreement" (the "Guarantee"). The Guarantee expressly provides that Villanueva will be required to pay an attorney's fee of 15% of any principal and interest due under the Guarantee if an attorney's services are

used to obtain payment or otherwise enforce Villanueva's obligation.

On March 18, 1983, Pan Am Bank was declared insolvent by the Comptroller of the Currency of the United States, who then ordered the Bank closed and appointed the FDIC as receiver, pursuant to 12 U.S.C. §§ 191 and 1821(c). Subsequently, the FDIC, acting in its corporate capacity, purchased from the FDIC, in its capacity as receiver, certain assets of Pan Am Bank, including the Note executed by Arcadia and the Guarantee signed by Villanueva.

While acknowledging that $8,401.60 in payments have been received either by Pan Am Bank or by the FDIC in reduction of Arcadia's obligation under the Note, the FDIC claims that $75,364.40 remains due and owing on Arcadia's Note.[1] In addition, the FDIC alleges that it is entitled to 15% of that amount in attorney's fees, according to the terms of the Guarantee signed by Villanueva. Pursuant to Fed.R.Civ.P. 56, the FDIC has now moved for summary judgment with regard to defendants' outstanding obligations under the Note and the Guarantee.

Defendants do not dispute that $49,-213.30 is due on the Note. Defendants do allege, however, that Pan Am Bank failed to credit defendants with two payments, one for $1,401.10 and one for $24,750.00, made towards the Arcadia account. In addition, defendants contend that the FDIC is not entitled to collect attorney's fees from Villanueva, since the FDIC, in its corporate capacity, should not properly be regarded as successor-in-interest to the rights of Pan Am Bank under the Guarantee.

## DISCUSSION

## A. CONTESTED PAYMENTS

Upon a motion for summary judgment, "[t]he judgment sought shall be rendered forthwith if ... there is no *genuine* issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (emphasis added). Thus, the mere fact that defendants dispute the FDIC's claim of non-payment in certain respects does not preclude this Court from granting plaintiff's motion for summary judgment, absent proof by defendants that such dispute is "genuine." As the Second Circuit has clearly stated:

> The litigant opposing summary judgment ... "may not rest upon mere conclusory allegations or denials" as a vehicle for obtaining a trial. Rather, he must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful.

*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

### 1. *May 1983 Payment*

Defendants allege that on May 13, 1983, a payment of $1,401.10 was made towards the Arcadia account. *See* Affidavit of Juan C. Villanueva ("Villanueva Affidavit") ¶¶ 6, 7. To support that allegation, Villanueva has produced a Pan Am Bank coupon for the amount of $1,401.10 dated May 13, 1983 and stamped "Paid." *See* Defendants' Rule 3(g) Statement, Exhibit F.

In moving for summary judgment, however, the FDIC specifically alleged that the Arcadia's May 1983 check for $1,410.10 was returned one week later for insufficient funds, *see* Affidavit of Nestor Sybing ("Sybing Affidavit") ¶ 9(d), and that Pan Am Bank coupon was stamped "Paid" before Arcadia's check actually "bounced."

---

**1.** Some confusion is engendered by the FDIC stating that $75,364.40 is the "unrebated" amount due on the Note, while the "rebated" amount due is $73,369.66. *See* Affidavit of Nestor Sybing ¶ 13. Plaintiff does not explain, however, the nature of the rebate to which it alludes.

Based on a careful review of the papers, the Court has concluded that, in order for the rele- vant mathematical calculations to make sense, it is necessary to proceed on the assumption that the FDIC's position is that $75,364.40 remains due on the note. If this supposition is in error, it is expected that plaintiff's counsel, as an officer of the court, will come forward and state for the record that defendants' obligation has been overcalculated by $1,994.74, the amount of the unidentified rebate.

*See* Reply Affidavit of Nestor Sybing ("Sybing Reply Affidavit") ¶ 6.[2]

Defendants have never responded to the FDIC's contention that, because Arcadia's check bounced, defendants are not entitled to be given credit for the May 1983 payment. Under the circumstances, defendants have failed to provide any "affirmative indication that [their] version of relevant events is not fanciful." *Quinn, supra,* 613 F.2d at 445.

### 2. *November 1982 Payment*

In support of their position that the FDIC has improperly failed to credit the Arcadia account for a payment of $24,750.00, defendants have produced a copy of a Bankers Trust Company check ("Bankers Trust check") in that amount, dated November 22, 1982, and made payable to Pan Am Bank. *See* Plaintiff's Notice of Motion for Summary Judgment, Exhibit G. In response, the FDIC has produced a copy of the *back* of the same check, upon which are written several notations indicating that the funds were applied to certain loans which had previously extended by Pan Am Bank to an entity known as Tamar Properties N.V. ("Tamar"). *See id.,* Exhibit H; Sybing Affidavit ¶¶ 10, 11.

Thus, although the FDIC concedes that Villanueva wrote a check to Pan Am Bank for $24,750.00, plaintiff also maintains that the November 1982 payment had nothing to do with the Arcadia account. In this regard, the FDIC points out that the Bankers Trust check was dated only ten days after Arcadia had executed its Note, and more than two weeks before the first installment (for approximately $1,400) was due on the Note. *See* Sybing Affidavit ¶ 12. In addition, such an early payment, for more than one-quarter of the entire

amount due on the Note, would have constituted a singular exception to Arcadia's otherwise consistent pattern of making late payments on its Note. *See* Sybing Reply Affidavit ¶ 7. Finally, the FDIC points out that the check presented by Arcadia to Pan Am Bank on December 28, 1982 was marked "Installment # 1" on its front, an unlikely designation if Arcadia's indebtedness on the Note had already been reduced by more than $24,000. *See* Sybing Affidavit ¶ 12.

The proof offered by the FDIC regarding the purpose of the November 1982 payment, however, has been challenged by several statements made by defendant Villanueva in his sworn affidavit. Specifically, Villanueva states: first, that he has never been an officer, director or stockholder of Tamar, nor does he have any knowledge regarding Tamar; second, that he did not write any of the notations on the back of the Bankers Trust check and that he does not know why those notations appear there; and third, that he personally delivered the Bankers Trust check to a Pan Am Bank cashier with specific instructions that the funds were to be used to reduce the balance of Arcadia's Note. *See* Villanueva Affidavit ¶¶ 10, 12.[3]

An affidavit sworn to by a party opposing summary judgment and containing statements based on personal knowledge deserves to be generously construed, *see Jensen v. United States,* 662 F.2d 664, 667 (10th Cir.1981); *cf. Hanlin v. Mitchelson,* 794 F.2d 834, 839 (2d Cir.1986) (sworn affidavit containing statements of fact made by *pro se* plaintiff prior to discovery presented evidence sufficient to withstand summary judgment). Indeed, the FDIC has conceded that defendants "by denying

---

**2.** Nestor Sybing is the FDIC Loan Workout Specialist assigned to the liquidation of Pan Am Bank. In asserting that Arcadia's May 1983 check was returned for insufficient funds, Sybing relies on a Pan Am Bank "Inquiry Ledger" dated November 30, 1984. *See* Plaintiff's Notice of Motion for Summary Judgment, Exhibit F.

**3.** With regard to the FDIC's suggestion that a substantial and early payment on the Arcadia

Note was improbable, Villanueva states that he made the payment when he realized that Arcadia did not actually need the entire amount that had been loaned by Pan Am Bank, and because he felt that an early repayment of a large part of the Note would be of assistance to Pan Am Bank, which was suffering from financial difficulties. *See* Villanueva Affidavit ¶ 11.

... any connection with [Tamar] ..., have raised a factual issue." Sybing Reply Affidavit ¶ 7. Under these circumstances, the Court is constrained, at this time, to find that a triable issue of fact exists with respect to the November 1982 payment.[4] It is worth noting, however, that the FDIC has asked "to examine the [d]efendants and then determine its position as to the $24,750 amount." Sybing Reply Affidavit ¶ 7. Plaintiff's suggestion that additional discovery be taken regarding the November 1982 payment and the relationship, if any, between defendants and Tamar, is entirely appropriate. Accordingly, the FDIC is granted leave to renew its motion for summary judgment if such renewal is warranted by additional evidence discovered before trial. *See* 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2728 at 192 (1983); *see Rotberg v. Dodwell & Co.*, 152 F.2d 100, 101 (2d Cir.1945); *cf. Hanlin v. Mitchelson, supra,* at 839 (approving subsequent grant of summary judgment after *pro se* plaintiff had obtained significant discovery).

## B. ATTORNEY'S FEES

■ The Guarantee signed by defendant Villanueva provides in pertinent part that "whenever an attorney is used to ... enforce ... this guarantee, ... an attorney's fee of 15% of the principal and interest then due hereunder shall be payable by each Guarantor against whom this guarantee ... is sought to be enforced, declared, or adjudicated." Plaintiff Notice of Motion for Summary Judgment, Exhibit C.

Defendants maintain, however, that the FDIC is not entitled to enforce this provision of the Guarantee unless the FDIC qualifies as a "successor-in-interest" of Pan Am Bank. Having taken this position, defendants rely on *City of New York v. Turnpike Development Corp.*, 36 Misc.2d 704, 233 N.Y.S.2d 887 (Sup.Ct., Kings Co., 1962) for the proposition a successor-in-interest "must continue to retain the same rights as the original owner without a change in ownership." *Id.*, 233 N.Y.S.2d at 890. Where there has been a change in substance as well as form, however, the new owner is a transferee rather than a successor-in-interest. *See id.* Defendants argue that when the FDIC, acting in its corporate capacity, purchased Pan Am Bank's assets from the FDIC as receiver, the transaction marked a substantive change in ownership. *See FDIC v. Hatmaker*, 756 F.2d 34, 36 & n. 2 (6th Cir.1985) (FDIC's roles as receiver and as corporate insurer are distinct). Thus, defendants maintain that the FDIC is a mere transferee rather than a true successor-in-interest, and is not entitled to collect attorney's

---

**4.** In so ruling, this Court does not mean to suggest that an affidavit by a party opposing summary judgment will, under all circumstances, render the movant helpless. First, such an affidavit is meaningless unless the factual issues it raises are material within the meaning of Rule 56. *See Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) (mere existence of non-material factual issues will not suffice to defeat a motion for summary judgment). For example, Villanueva's statement that he instructed a Pan Am Bank cashier to deposit his Bankers Trust check in the Arcadia account is actually immaterial as a matter of law, since the FDIC's interest in an asset it has purchased cannot be defeated by reliance on an oral agreement with bank officials. *See FDIC v. Powers*, 576 F.Supp. 1167, 1169 (N.D.Ill.1983), *aff'd mem.*, 753 F.2d 1076 (7th Cir.1984); 12 U.S.C. § 1823(e).

Second, an opposing party's conclusory allegations or denials do not provide an adequate basis for the denial of a motion for summary judgment. *See JSP Agency, Inc. v. American Sugar Refining Co.*, 752 F.2d 56, 59 (2d Cir. 1985). Even if the affidavit sets forth specific facts within the meaning of Fed.R.Civ.P. 56(e), an affidavit containing nothing more than allegations or denials unsupported by evidence beyond the affiant's testimony might be insufficient to counteract particularized proof offered by the moving party. *Cf. Bros, Inc. v. W.E. Grace Manufacturing Co.*, 261 F.2d 428, 432–33 (5th Cir.1958). For example, if the FDIC had offered evidence affirmatively demonstrating some connection between Tamar and either defendant, it is a close question whether Villanueva's mere denials of such a connection would have constituted the sort of "significant probative evidence" which a party opposing summary judgment must produce when the moving party has satisfied its own preliminary burden of proof. *See United States v. Pent-R-Books, Inc.*, 538 U.S. 519, 529 (2d Cir.1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).

fees from Villanueva under the terms of the Guarantee.[5]

Defendants' argument that the FDIC, acting as purchaser of a closed bank's assets, may not enforce the same rights as a successor-in-interest to the closed bank, is almost certainly flawed as a matter of law. It is true that courts have found the FDIC not subject to certain defenses that a debtor would ordinarily be permitted to raise against a successor-in-interest. *See FDIC v. Robuck Co.,* 479 F.Supp. 323, 326 (D.S.C. 1979); *FDIC v. Vogel,* 437 F.Supp. 660, 663 (E.D.Wis.1977). These decisions, however, were not intended to delimit the legal status of the FDIC; rather, they reflect judicial recognition of the intent of Congress to vest the FDIC, in its corporate capacity, with significantly more protection against debtors' defenses than is ordinarily enjoyed by a bank or its receiver. *See Vogel,* 437 F.Supp. at 663 (interpreting 12 U.S.C. § 1823(e)). Thus, properly understood, such cases signify that the FDIC in its corporate capacity should be treated as *more* than a successor to the closed bank, not less. *Cf. Zinman v. FDIC,* 567 F.Supp. 243, 247 (E.D.Pa.1983) (Congress intended powers of FDIC to be construed liberally).

Moreover, even if defendants are correct that the FDIC should not be defined as Pan Am Bank's "successor," it simply does not follow that the FDIC should then be precluded from enforcing the Guarantee's attorney's fee provision against Villanueva. The Guarantee specifically states that "[t]he term 'Bank' as used throughout this guarantee shall be deemed to include ... any ... indorsees, successors or assignees of Bank." Plaintiff's Notice of Motion for Summary Judgment, Exhibit C. Thus, the Guarantee does not restrict the right to enforce its terms to successors-in-interest. To the contrary, as shown by the agreement between Pan Am Bank and Villanueva, it was specifically contemplated the possibility that the Guarantee could be enforced by the Bank's "assignees." Significantly, defendants have nowhere argued that the FDIC, acting in its corporate capacity as purchaser of a closed bank's assets, could not qualify as the assignee of Pan Am Bank's interest in the Arcadia Note.

Defendants have not cited a single case in which the FDIC was precluded from collecting attorney's fees against the guarantor of a closed bank's loan agreement. Indeed, it has been held that a guarantor of a borrower's obligation under a Note is obligated to pay the FDIC reasonable attorney's fees even when such fees are not specifically referred to in the guaranty agreement. *See FDIC v. Fagan,* 674 F.2d 302, 306 (4th Cir.1982).

Given the Guarantee's unambiguous language regarding the payment of attorney's fees to any assignee of Pan Am Bank which has found it necessary to seek judicial enforcement of the Guarantee, the Court finds that no triable issue of fact exists with regard to Villanueva's clear obligation to pay the FDIC attorney's fees at the rate set forth in the Guarantee.

## C. ORDER STATING MATTERS NOT CONTROVERTED

■ Because a genuine issue of material fact exists with respect to a portion of plaintiff's claim, *see* discussion *supra* at 1160–61, plaintiff's motion for summary judgment must be denied at this time. Nonetheless, based upon an examination of the pleadings and the other evidence presented on the motion for summary judgment, it is entirely appropriate for this Court to enter an order specifying those facts that appear "without substantial controversy." Fed.R.Civ.P. 56(d). Such an order may include "the extent to which the amount of damages or other relief is not in controversy." *Id.*

5. Defendants' reliance on a decision rendered nearly twenty-five years ago by a lower state court is surprising in light of the well-settled principle that federal law should supply the rule of decision in actions brought by the FDIC in its corporate capacity. *See FDIC v. Blue Rock Shopping Center, Inc.,* 766 F.2d 744, 747 (3d Cir.1985).

In opposing the FDIC's motion for summary judgment, defendants have never contested their obligation to pay $49,213.30 due and owing on the Note executed by Arcadia and guaranteed by Villanueva. Thus, defendants' obligation in that amount is a fact that will be deemed established upon the trial of this action. *See Bonda's Veevoederfabriek, Provimi, B.V. v. Provimi, Inc.*, 425 F.Supp. 1034, 1036 (E.D.Wis.1976) (where over $40,000 in royalties were admittedly due and no longer in issue, the debt was properly the subject of a Rule 56(d) order).

In addition, defendants' allegation that the FDIC should have given Arcadia credit for a payment made in May 1983 for $1,401.10 does not constitute a trialworthy dispute. *See* discussion, *supra*, at 1159–60.

Finally, this Court finds that no genuine issue of material fact exists with respect to the right of the FDIC to enforce the Guarantee's attorney's fees provision against defendant Villanueva. The actual amount of attorney's fees due plaintiff, however, will remain unsettled until there is a final determination of the amount still due on Arcadia's Note.

### CONCLUSION

For the reasons stated herein, plaintiff's motion for summary judgment is denied, without prejudice to its renewal upon further discovery. Pursuant to Fed.R.Civ.P. 56(d), this Court finds that no substantial controversy exists with regard to defendants' continued obligation, under the terms of the Note executed by Arcadia, to pay the FDIC $50,614.40. A triable issue of fact remains, however, with respect to the $24,750.00 defendants contend was paid to Pan Am Bank in November 1982 for the purpose of reducing the balance of Arcadia's Note. Judgment will not be entered in this case until this final dispute has been settled by the parties or otherwise adjudicated.

SO ORDERED.