Israel Rubin, J.
This action has been submitted for decision upon an agreed statement of facts pursuant to CPLR 3222.
Plaintiff retained a real estate broker to negotiate with the defendant for the purchase of premises 621-629 East 163rd Street and 604^612 Teasdale Place, Bronx, N. Y. which premises were owned by the defendant.
A contract of sale was ultimately entered into on May 28, 1970, providing a purchase price of $80,000 and the sum of $8,000 was given to the defendant as a down payment pursuant to the contract. The date for closing was set for October 15, 1970, time being made of the essence.
Prior to the closing date, plaintiff learned that the property under contract was being considered by the Board of Estimate and the City Planning Commission for inclusion in the South Bronx Neighborhood Development Plan for the South Bronx Model Cities Area. Before the scheduled closing date, the *30 calendar of the City Planning Commission for June 10, 1970 indicated that the Teasdale Place property was the subject of a public hearing seeking the approval of the City Planning Commission for the inclusion of the property in an Amended Neighborhood Development Plan (Urban Renewal Plan) for the South Bronx Model Cities Area. Similarly, a resolution of the Board of Estimate was adopted July 23, 1970, approving the Amended Urban Renewal Plan approved by the City Planning Commission, and another resolution of the Board of. Estimate adopted July 23, 1970 found and proposed that the subject property should be acquired by the City of New York by condemnation.
After the contract was entered into the plaintiff ordered and received a title search. The cost of such examination was $265.
On October 15, 1970, the date for closing of title pursuant to the contract of sale, the plaintiff failed to appear at the office of the attorneys for the defendant for closing. The plaintiff had previously filed a notice of pendency against the property on October 13, 1970 which has been canceled and an undertaking filed in its place.
On the date set for closing, it is conceded that the defendant was ready, willing and able to close title and to deliver an insurable title to the plaintiff.
On February 11, 1971, title to the property vested in the City of New York in condemnation proceedings.
The plaintiff seeks a rescission of the contract and a return of its down payment and the cost of title examination solely upon the contention that proper title could not be conveyed by the defendant because of the proposed condemnation proceedings.
The controversy submitted for decision is whether or not, based upon the foregoing facts, plaintiff is entitled to judgment against the defendant in the sum of $8,265, representing its contract down payment and the cost of its title examination.
The contract was prepared on a standard New York Board of Title Underwriters form and provided that ‘ ‘ the seller shall give and the purchaser shall accept a title such as City Title or, a Member of the New York Board of Title Underwriters, will approve and insure.”
The first question presented pursuant to the agreed statement pf facts is whether the defendant was obliged to deliver, and plaintiff obliged to accept, a title such as City Title or a member of the New York Board of Title Underwriters would approve and insure.
*31 This question is answered in the affirmative.
It appears from the papers submitted that application for title insurance was made to City Title Insurance Company and that such company rendered a report of title free of any encumbrances which could not be cleared at closing. The title report does not set forth any pending condemnation proceedings. City Title approved and was prepared to insure title to the purchaser. The purchaser agreed to accept a title such as City Title would approve and insure and that is what the seller was prepared to deliver on the closing date. This provision in the contract made the title company the final judge of title and when the title company was prepared to insure title in accordance with the contract no further requirement had to be met (Kopp v. Barnes, 10 A D 2d 532; Laba v. Carey, 36 A D 2d 823, revd. 29 N Y 2d 302; Haar v. Daly, 232 App. Div. 423, affd. 258 N. Y. 623).
The second question to be answered is whether the defendant was obliged to deliver, and the plaintiff obligated to accept, a marketable title.
The first question being answered in the affirmative, by necessity the second question must be answered in the negative.
It is up to the parties to a contract to agree to the kind of title to be conveyed. In the absence of agreement otherwise, a buyer is entitled to a “ marketable title.” This need not be expressly agreed but arises by implication .from the contract. (Vought v. Williams, 120 N. Y. 253; 7 Williston, Contracts [3d ed.], § 923.) However, by contracting for an insurable title, the parties have abrogated the general rule.
The plaintiff points to the case of New York Investors v. Manhattan Beach Bathing Parks Corp. (229 App. Div. 593, affd. 256 N. Y. 162), as standing for the proposition that the fact that a title company is willing to insure title does not render the title marketable and that it is presumed that a marketable title is to be conveyed. Generally, unless the contract provides otherwise this proposition is correct. In New York Investors v. Manhattan Beach (supra), the contract specifically provided for a marketable title and also for such title as a title company will insure. This provision sets up a double standard and entitles a purchaser to both insurability and marketability. The court stated (p. 598): “ The contract must be read as a whole, and the clause * * * to convey the absolute fee of the premises [and] free from all encumbrances except those mentioned in the contract require that two standards must be met.”
*32 In the instant contract there is no comparable language. The parties contracted only for a title such as City Title would approve and insure and unlike New York Investors v. Manhattan Beach (supra), marketable title was not required. The plaintiff cannot now rewrite the contract. It is conceded under the stipulated facts that the defendant was ready, willing and able to deliver insurable title on the closing date and that is all the defendant was required to do.
Although the court has found that all that was necessary was an insurable title, an interesting question presented in this case is whether the contemplated condemnation rendered title unmarketable.
In the usual case, an encumbrance renders title unmarketable. Blacks Law Dictionary (4th ed., p. 908) defines an encumbrance as being “ any right to, or interest in, land which may subsist in another to the diminution of its value, but consistent with the passing of the fee ”. Any claim, lien, charge or liability attached to and binding real property is an encumbrance. The most common examples are a mortgage, judgment, lien, lease, restrictions in a deed, an easement or right of way.
However, mere preliminary steps or plans for the future, appropriation of property does not constitute) a defect or encumbrance rendering title unmarketable (Ann. 21 ALR 2d, Marketable Title — Condemnation Plans, p. 806; Forster v. Scott, 136 N. Y. 577; Wagner v. Perry, 47 Hun 516).
The parties make reference to section 5-1311 of the General Obligations Law, entitled the ‘ ‘ Uniform vendor and purchaser risk act ” and its predecessor section 240-a of the Real Property Law. This section is made part of every contract of sale unless specifically excluded. Prior to the enactment of the section, the vendee bore the risk of loss in the event of taking by condemnation subsequent to entering into a contract of sale and prior to closing. The contract of sale was deemed to effect an equitable conversion, making the seller the holder of legal title to the property as security for the purchase price and making the buyer in equity the owner of the property. The buyer took subject to the risk of condemnation occurring after the contract. The buyer could not rescind the contract of sale by reason of condemnation of the premises and remained liable for the purchase price. (Friedman, Contracts and Conveyances of Real Property [2d ed.], § 4.31, p. 227.)
The uniform vendor and purchaser risk act (General Obligations Law, § 5-1311) changed the principle of equitable conversion. The act provides that: “ a. When neither the legal title *33 nor the possession of the subject matter of the contract has been transferred to the purchaser: (1) if all or a material part thereof * * * 'is taken by eminent domain, the vendor cannot enforce the contract, and the purchaser is entitled to recover any portion of the price that he has paid; but nothing herein contained shall be deemed to deprive the vendor of any right to recover damages against the purchaser for any breach of contract by the purchaser prior to the destruction or taking.” (Emphasis added.)
The key word in the aforesaid section is “ taken ”. In order for the section to apply, the condemnation must be completed. The section does not cover a pending or preliminary condemnation (Margel v. Edison Realty Corp., 282 App. Div. 954).
A condemnation occurring after the ■ closing date will not relieve a vendee of liability under the contract to sell. Where a taking by eminent domain has not occurred prior to the date for closing a vendor has a right to damages for breach of contract (Margel v. Edison, supra).
The defendant is, therefore, entitled to a judgment dismissing the complaint.