[879 NE2d 148, 849 NYS2d 9]

DONALD J. O'MARA III et al., Respondents, v TOWN OF WAP-PINGER, Appellant.

Argued October 16, 2007; decided November 15, 2007

**POINTS OF COUNSEL**

*Vergilis, Stenger, Roberts & Davis, LLP,* Wappingers Falls (*Kenneth M. Stenger* of counsel), for appellant. I. There is a distinction between land use control imposed by police power and private agreement. (*Matter of Friends of Shawangunks v Knowlton,* 64 NY2d 387.) II. The 1963 resolution of subdivision approval was an exercise of police power under Town Law § 276. (*Asian Am. for Equality v Koch,* 129 Misc 2d 67, 128 AD2d 99, 72 NY2d 121; *Matter of Kamhi v Planning Bd. of Town of Yorktown,* 59 NY2d 385; *Matter of Golden v Planning Bd. of Town of Ramapo,* 30 NY2d 359; *Matter of Brous v Smith,* 304 NY 164; *Delaware Midland Corp. v Incorporated Vil. of Westhampton Beach,* 79 Misc 2d 438, 48 AD2d 681, 39 NY2d 1029.) III. The creation of the buffer areas was a legitimate exercise of police power. (*Matter of International Innovative Tech. Group Corp. v Planning Bd. of Town of Woodbury, N.Y.,* 20 AD3d 531; *Matter of Koncelik v Planning Bd. of Town of E. Hampton,* 188 AD2d 469.) IV. The "open space" notation on the filed map provides an additional level of notice. (*Eltman v Harvey,* 93 Misc 2d 634.) V. The subdivision condition creating parcels B and E as a buffer applies to the land and is enforceable under the provisions of Town Law § 268 irrespective of ownership. (*Matter of Weinrib v Weisler,* 33 AD2d 923; *FGL & L Prop. Corp. v City of Rye,* 66 NY2d 111; *Matter of Golden v Planning Bd. of Town of Ramapo,* 30 NY2d 359; *Nehrbas v Incorporated Vil. of Lloyd Harbor,* 1 AD2d 1034, 2 NY2d 190; *Matter of St. Onge v Donovan,* 71 NY2d 507; *Matter of Conte v Town of Norfolk Zoning Bd. of Appeals,* 261 AD2d 734; *Matter of Dexter v Town Bd. of Town of Gates,* 36 NY2d 102; *Matter of Marx v Planning Bd. of Vil. of*

*Mill Neck,* 185 AD2d 348; *Bringslimark v Town of Clarkstown,* 128 AD2d 663; *Delaware Midland Corp. v Incorporated Vil. of Westhampton Beach,* 79 Misc 2d 438.) VI. The subdivision condition is stated plainly and unambiguously. (*Holmes v Planning Bd. of Town of New Castle,* 78 AD2d 1.) VII. The Town of Wappinger is not estopped from exercising its police power under Town Law § 268 (2). (*Matter of Parkview Assoc. v City of New York,* 71 NY2d 274; *Town of Putnam Val. v Sacramone,* 16 AD3d 669.)

*Bleakley Platt & Schmidt, LLP,* White Plains (*James W. Glatthaar* and *Kenneth C. Brown* of counsel), for respondents. I. The Town of Wappinger's enforcement of the Planning Board's open space restriction is void as an ultra vires act because it exceeded its police power by enforcing the restriction without complying with the "open space" provision of General Municipal Law § 247. (*Matter of Long v Adirondack Park Agency,* 76 NY2d 416; *Ryder v City of New York,* 32 AD3d 836; *Matter of DeTroia v Schweitzer,* 87 NY2d 338; *Cole v Mandell Food Stores,* 93 NY2d 34; *Matter of Raritan Dev. Corp. v Silva,* 91 NY2d 98; *Matter of Dutchess County Dept. of Social Servs. v Day,* 96 NY2d 149; *Gray v Delpho,* 97 Misc 37; *Mutual Life Ins. Co. of N.Y. v Dake,* 87 NY 257; *Yen-Te Hsueh Chen v Geranium Dev. Corp.,* 243 AD2d 708; *Andy Assoc. v Bankers Trust Co.,* 49 NY2d 13.) II. The open space restriction is not a "zoning regulation" of the Town Board, as the Second Circuit inaccurately referred to it. Thus, the O'Maras are not presumed to have constructive knowledge of the restriction. (*Matter of Real Holding Corp. v Lehigh,* 2 NY3d 297; *Matter of Society of N.Y. Hosp. v Del Vecchio,* 70 NY2d 634; *North Bay Assoc. v Hope,* 116 AD2d 704; *Envirogas, Inc. v Town of Westfield,* 82 AD2d 117; *B & J Invs. Corp. v Town Bd. of Town of Clinton,* 56 AD2d 882; *Matter of Weisman v Zoning Bd. of Appeals of Vil. of Kensington,* 260 AD2d 487; *Matter of Marx v Planning Bd. of Vil. of Mill Neck,* 185 AD2d 348; *Bringslimark v Town of Clarkstown,* 128 AD2d 663.) III. The unrecorded open space restriction is not in the O'Maras' chain of title and, thus, is not enforceable against them under Real Property Law § 291 and General Municipal Law § 247. (*Matter of Ioannou v Southold Town Planning Bd.,* 304 AD2d 578; *Witter v Taggart,* 78 NY2d 234; *Eltman v Harvey,* 93 Misc 2d 634; *Goldstein v Gold,* 66 NY2d 624; *Ebling Brewing v Gennaro,* 189 App Div 782; *Covey v Niagara, Lockport & Ontario Power Co.,* 286 App Div 341; *Pallone v New York Tel. Co.,* 30 NY2d 865; *Webster v Ragona,* 7 AD3d 850; *Russell v Perrone,* 301 AD2d 835.)

*Michael E. Kenneally, Jr.*, Albany, for Association of Towns of the State of New York, amicus curiae. I. A planning board may impose an open space restriction as a condition of approval of a subdivision. (*Matter of International Innovative Tech. Group Corp. v Planning Bd. of Town of Woodbury, N.Y.*, 20 AD3d 531; *Matter of Pearson Kent Corp. v Bear*, 28 NY2d 396; *Matter of Koncelik v Planning Bd. of Town of E. Hampton*, 188 AD2d 469.) II. Upon filing with the County Clerk, the contents of a subdivision plat are binding and enforceable as against all purchasers of the lots, blocks, parcels or sites created thereby. (*Matter of Koncelik v Planning Bd. of Town of E. Hampton*, 188 AD2d 469; *Vernon Park Realty, Inc. v City of Mount Vernon*, 307 NY 493.) ·

### OPINION OF THE COURT

JONES, J.

In 1962 two developers, David Alexander and Fred Lafko, purchased property in the town of Wappinger, Dutchess County, with plans to develop a condominium project to be known as Wildwood Manor. The Planning Board tentatively approved a preliminary layout of the project and conditioned approval, in part, on the creation of a permanent open space on a preliminary plat.[1] At a January 23, 1963 meeting, the Board approved the final plat (1963 Plat), which divided the property into seven parcels, including parcels B and E, which were designated the buffer area where open space would be located.[2] The words "Open Space" were written on parcels B and E of the plat. The

---

1. Generally, a plat is a map describing a piece of land and its features, such as boundaries, lots, roads, and easements (*see* Black's Law Dictionary 1188-1189 [8th ed 2004]). Under Town Law § 276 (4) (b), a "preliminary plat" is

> "a drawing prepared in a manner prescribed by local regulation showing the layout of a proposed subdivision including, but not restricted to, road and lot layout and approximate dimensions, key plan, topography and drainage, all proposed facilities unsized, including preliminary plans and profiles, at suitable scale and in such detail as local regulation may require."

2. Under Town Law § 276 (4) (d), the "final plat" is

> "a drawing prepared in a manner prescribed by local regulation, that shows a proposed subdivision, containing in such additional detail as shall be provided by local regulation all information required to be shown on a preliminary plat and the modifications, if any, required by the planning board at the time of approval of the preliminary plat if such preliminary plat has been so approved."

Further, Town Law § 276 (4) (f) provides as follows:

Board minutes for the January 23 meeting indicated that the plat was accepted subject to eight conditions, among them that no building permits would be issued for parcels B and E, as indicated on the 1963 Plat. The 1963 Plat and Board minutes were filed with the Town. The 1963 Plat was also filed with the Dutchess County Clerk's Office. Wildwood Manor was ultimately constructed and continues to be occupied.

Parcels B and E remained undeveloped for nearly 40 years until the circumstances that prompted this litigation arose.[3] Plaintiff Absolute Property Management, a corporation owned by brothers Donald and Patrick O'Mara, acquired parcels B and E. On October 18, 2000, Absolute purchased the parcels for $29,500 at an in rem tax sale with the intent to construct 10 single family houses on the property. It took title subject to any existing right-of-way, easement, any and all existing restrictions, conditions and covenants of record. Prior to closing, Patrick O'Mara ordered a title report and obtained title insurance. Attached to the policy was Schedule B. Neither Schedule B nor the title policy made reference to an "Open Space" restriction.

In 2002, the O'Maras, taking steps towards building on the property, retained a licensed land surveyor (Gerald Lynn) who prepared a survey of parcels B and E. Lynn based the survey, in part, on an examination of the 1963 Plat. Lynn observed the "Open Space" notation on parcels B and E, but ignored it and never included the notation on the survey submitted to the Town Building Department.[4] The first house was to be built on parcel B and was to serve as a residence for Donald O'Mara and his family. The Town issued a building permit, a temporary certificate of occupancy and approved both an interim survey for the lot on which the house was to be built and a site plan.

---

" 'Final plat approval' means the signing of a plat in final form by a duly authorized officer of a planning board pursuant to a planning board resolution granting final approval to the plat or after conditions specified in a resolution granting conditional approval of the plat are completed. Such final approval qualifies the plat for recording in the office of the county clerk or register in the county in which such plat is located."

3. Notwithstanding the Board's restrictions, at some point, the Wappinger Tax Assessor increased the assessment on the property from $7,500 to $47,500 noting on his records, "No Reason For this very low value. Good Buildable Land." Thereafter, Fred Lafko's estate ceased making tax payments on the two parcels.

4. Had Lynn included the notation on the survey, the Building Inspector would have been alerted to the restriction.

In July 2003, Ronald Lafko, the son of Fred Lafko (one of the original developers of the land), approached a town councilman to express his concern that the development violated the 1963 Plat. In November 2003, the newly-appointed Town Building Inspector issued a stop work order based on the open space restriction noted on Map 3107. Donald O'Mara protested the issuance of the order and attempted to resolve the matter with the Town. The O'Maras were not aware of the "open space" restrictions on parcels B and E until after the Town issued the order—three years after they purchased the property. The Town permitted Donald O'Mara to complete exterior work but did not vacate the stop work order. On December 2, 2003 an attorney for the Town made a written settlement proposal to the O'Maras' counsel in which the Town offered to grant a certificate of occupancy for the house provided the rest of parcels B and E were dedicated to the Town. In response, the O'Maras filed an action in the United States District Court for the Southern District of New York.

The O'Maras' original complaint alleged claims under 42 USC § 1983 and under the Takings Clause of the Federal Constitution, the latter being dismissed on the eve of trial. The complaint was amended to add a claim for a judgment declaring that the O'Maras owned parcels B and E free and clear of the open space restriction. Essentially, the O'Maras argued that the open space restriction had to be recorded under Real Property Law § 291 to be enforceable against them. In further support of that argument, plaintiffs urged that the Town acquired an interest in the property pursuant to General Municipal Law § 247 and upon acquisition of the property by the Town, the recording requirement was triggered. The amended complaint also contained claims for fraud and negligent misrepresentation.

The District Court dismissed the fraud and negligence claims. As to the section 1983 claim, the court held that because the O'Maras had a legitimate claim of entitlement to a certificate of occupancy and the Town's basis for withholding the certificate was illegal, the Town had violated the O'Maras' constitutional right to substantive due process, thus entitling them to damages for the loss of use and occupancy of the house. Finally, the court held that the open space restriction was unenforceable against the O'Maras, who were bona fide purchasers for value without notice. The court, citing Real Property Law § 291, determined that the restriction was not properly recorded within Dutchess County. Further, the court, relying on *Matter of*

*Ioannou v Southold Town Planning Bd.* (304 AD2d 578 [2d Dept 2003]), held that the failure to record any restriction on the use of property precludes enforcement of the restriction.[5]

Upon the Town's appeal, the United States Court of Appeals for the Second Circuit reversed in part by dismissing the section 1983 claim. Additionally, the court held that "[w]hile . . . the process of approving and filing the 1963 Plat complied with both [Town Law § 276 and Real Property Law § 334], neither section addresses whether a subdivision plat is enforceable against subsequent purchasers" (*id.* at 699). In light of the foregoing, and given the absence of controlling precedent from this Court, the Second Circuit certified the following question to this Court: "Is an open space restriction imposed by a subdivision plat under New York Town Law § 276 enforceable against a subsequent purchaser, and under what circumstances?" (*Id.*) Under the circumstances of this case, we answer the certified question in the affirmative. An open space restriction placed on a final plat pursuant to Town Law § 276, when filed in the Office of the County Clerk pursuant to Real Property Law § 334, is enforceable against a subsequent purchaser.

## Discussion

Real Property Law § 334, the law applicable to the filing of the 1963 Plat (and applicable today), provides that no real property subdivided into separate lots can be offered for sale to the public without the filing of a map in the Office of the County Clerk or Register of Deeds where the property is located. Additionally, no plat of a subdivision may be recorded (i.e., filed) with the County Clerk or Register until it is approved by a planning board and such approval is endorsed in writing on the plat in the manner designated by the planning board (*see* Town Law § 278 [now renumbered Town Law § 279 (1)]; § 276 [3]). Thus, the statutory scheme in effect in 1963 provided that (1) no subdivision could be approved except by the planning board, (2) no plat could be filed with the County Clerk unless it had the endorsement of the planning board and (3) the subdivision

---

5. The Second Circuit in its decision, *O'Mara v Town of Wappinger* (485 F3d 693 [2d Cir 2007]), held that *Ioannou* was inapposite because it addressed the enforceability of "[r]estrictive covenants" and not zoning restrictions "imposed by the Planning Board through its zoning powers" (*id.* at 697 n 6). Furthermore, the agreement was neither noted on the filed subdivision plat nor recorded in the Office of the County Clerk pursuant to Real Property Law § 291.

plat had to be filed in the Office of the County Clerk within 90 days of its approval. Accordingly, no lot subdivided from a larger piece could be sold without planning board approval. By virtue of its filing requirement, this statutory scheme afforded notice to the public.

Plaintiffs argue that the Board cannot enforce the open space restriction on their property unless the restriction is recorded under Real Property Law § 291, which requires that conveyances of real property be recorded.[6] In furtherance of this argument, plaintiffs posit that the Town, in reserving to itself the right to prevent anyone from building anything on these parcels, "acquired" an open space interest pursuant to General Municipal Law § 247 (2) and that this acquisition amounts to a "conveyance" of real property. Plaintiffs submit that because the prior owners (David Alexander and Fred Lafko) had been stripped of all rights to use parcels B and E, except the right to be taxed, the effect was that the property was acquired by the Town through its pervasive and restrictive control of the property. This Court disagrees and finds no evidence that the Town acquired parcels B and E by "purchase, gift, grant, bequest, devise, lease or otherwise" (General Municipal Law § 247 [2]). Further, there is no evidence that there was a "conveyance" within the meaning of Real Property Law § 290 (3). Accordingly, Real Property Law § 291 is inapposite to the case at bar. Moreover, there is no statutory requirement to record a plat in the chain of title.

The system of filing subdivision plats exists throughout New York State. In the instant case, a search of the records filed in the Office of the Dutchess County Clerk would have disclosed the 1963 Plat. When Absolute acquired title at the tax sale, a description of the property was limited to its tax grid number. The tax map only showed two boundaries for the lot conveyed. In order to determine the boundaries of its holdings, Absolute should have searched the County Clerk's property records until it found the subdivision plat that created its parcel. Had Absolute examined the plat, it would have discovered the open space restriction.

In conclusion, we note that towns are separately bestowed with the authority to regulate land use within their borders (*see*

---

**6.** Under Real Property Law § 290 (3), the "term 'conveyance' includes every *written instrument,* by which any estate or interest in real property is created, transferred, mortgaged or assigned, or by which the title to any real property may be affected" (emphasis added).

Town Law § 261). This grant of authority is broad and encompasses a town's ability to impose reasonable conditions in the course of approving a subdivision (*see* Town Law § 276; *see also Matter of Koncelik v Planning Bd. of Town of E. Hampton*, 188 AD2d 469, 471 [2d Dept 1992]). The ability to impose such conditions on the use of land through the zoning process is meaningless without the ability to enforce those conditions, even against a subsequent purchaser.

Accordingly, under the circumstances of this case, the certified question should be answered in the affirmative.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.27 of the Rules of Practice of the Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered under the circumstances of this case in the affirmative.