T.C. Memo. 2017-115

UNITED STATES TAX COURT

TEN TWENTY SIX INVESTORS, DOUGLAS OLIVER,
TAX MATTERS PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29483-14.                    Filed June 15, 2017.

<u>Kathleen M. Pakenham</u>, <u>Clint E. Massengill</u>, and <u>Adriana L. Wirtz</u>, for petitioner.

<u>Michael D. Wilder</u>, for respondent.

MEMORANDUM OPINION

THORNTON, <u>Judge</u>:  This case is before us on respondent's motion for partial summary judgment, which asserts that Ten Twenty Six Investors is not

[*2] entitled to a section 170[1] deduction for 2004 for the donation of a facade easement.[2]

Background

Ten Twenty Six Investors is a New York State limited partnership subject to the uniform partnership audit and litigation rules enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982. Throughout 2004 it owned a 10-story warehouse in New York City (warehouse). The warehouse, built in 1928, was designed by Cass Gilbert, who also designed the Woolworth Building and the United States Supreme Court Building.

On December 21, 2004, the partnership executed an easement deed (deed) granting a facade easement (easement) on the warehouse to National Architectural Trust, Inc. (NAT). The deed is titled "Conservation Deed of Easement" and references itself as such repeatedly throughout the document. A representative of NAT accepted and signed the deed on December 30, 2004. Not until December

---

[1] All section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2] At several points we refer to the "donation" of the easement at issue in this case. When we discuss the "donation" of the easement, we mean delivery of the deed to the National Architectural Trust, Inc. (NAT), and do not mean to suggest that the easement was legally effective on the date of delivery or that donation of the easement was a qualified conservation contribution under sec. 170 for 2004.

[*3] 14, 2006, however, did NAT cause the deed to be recorded in the Office of the City Register of the City of New York.

On its 2004 Form 1065, U.S. Return of Partnership Income, the partnership claimed deductions under section 170 of $11,355,000 for a noncash charitable contribution of the easement (consistent with an appraisal the partnership had obtained) and of $531,975 for a cash charitable contribution to NAT.[3]

The Commissioner issued a timely notice of final partnership administrative adjustment for the partnership's 2004 taxable year, disallowing the noncash charitable contribution deduction and $510,975 of the cash charitable contribution deduction and determining a 40% gross valuation misstatement penalty under section 6662(a) and (h) or, alternatively, a 20% penalty under section 6662(a) and (b)(1), (2), or (3).

Petitioner Douglas Oliver filed a timely petition on behalf of the partnership, and respondent moved for partial summary judgment as to the noncash charitable contribution deduction. Petitioner cross-moved for partial

_____

[3]The deed does not mention the cash contribution, and the record does not reveal any further details about it.

**[*4]** summary judgment regarding the 40% gross valuation misstatement penalty under section 6662(a) and (h).[4]

### Discussion

The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  In deciding whether to grant summary judgment, we view the factual materials and inferences drawn from them in the light most favorable to the nonmoving party.  See Sundstrand v. Commissioner, 98 T.C. at 520.

The moving party bears the burden of showing that there is no genuine dispute of material fact.  Id.  Where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading," but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial.  Rule 121(d).

---

[4]Petitioner's cross-motion for summary judgment will be held in abeyance.

[*5] I.    Deductions for Qualified Conservation Contributions

A taxpayer is generally allowed a deduction for any charitable contribution made during the taxable year. Sec. 170(a)(1). Although a taxpayer is generally not allowed a charitable contribution deduction for a gift of property consisting of less than an entire interest in that property, there is an exception for donation of a "qualified conservation contribution". See sec. 170(f)(3)(A), (B)(iii).

A qualified conservation contribution is a contribution (1) of a "qualified real property interest" (2) to a "qualified organization" (3) "exclusively for conservation purposes." Sec. 170(h)(1). Section 170(h)(2) defines "qualified real property interest" as "any of the following interests in real property":

> (A) the entire interest of the donor other than a qualified mineral interest,
>
> (B) a remainder interest, and
>
> (C) a restriction (granted in perpetuity) on the use which may be made of the real property.

The easement at issue in this case is not a section 170(h)(2)(A) or (B) interest. Therefore, to be a qualified real property interest the easement must be granted in perpetuity under section 170(h)(2)(C).

Section 170(h)(5)(A) provides a separate and distinct perpetuity requirement. See Belk v. Commissioner, 140 T.C. 1, 12 (2013), aff'd, 774 F.3d

**[\*6]** 221 (4th Cir. 2014). It provides that "[a] contribution shall not be treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity."

Additionally, section 1.170A-14(g)(1), Income Tax Regs., provides:

In the case of any donation under this section, any interest in the property retained by the donor (and the donor's successors in interest) must be subject to legally enforceable restrictions (for example, by recordation in the land records of the jurisdiction in which the property is located) that will prevent uses of the retained interest inconsistent with the conservation purposes of the donation.  * * *

In a Federal tax controversy State law controls the determination of a taxpayer's interest in property while the tax consequences are determined under Federal law. United States v. Nat'l Bank of Commerce, 472 U.S. 713, 722 (1985) ("In the application of a [F]ederal revenue act, [S]tate law controls in determining the nature of the legal interest which the taxpayer had in the property[.]" (quoting Aquilino v. United States, 363 U.S. 509, 513 (1960)); United States v. Mitchell, 403 U.S. 190, 197 (1971) ("[S]tate law creates legal interests, but [Federal law] determines when and how they shall be taxed." (quoting Burnet v. Harmel, 287 U.S. 103, 110 (1932)); Woods v. Commissioner, 137 T.C. 159, 162 (2011). Therefore, New York State law determines whatever interest may have been

**[*7]** conveyed pursuant to the agreement between the partnership and NAT, and Federal law determines the tax consequences.

## II.     The Parties' Arguments

Respondent contends that the easement is a "conservation easement" under New York State law.[5]  A conservation easement is defined under N.Y. Envtl. Conserv. Law (NYECL) sec. 49-0303(1) (McKinney Supp. 2017) as

> an easement, covenant, restriction or other interest in real property, created under and subject to the provisions of this title which limits or restricts development, management or use of such real property for the purpose of preserving or maintaining the scenic, open, historic, archaeological, architectural, or natural condition, character, significance or amenities of the real property * * *.

Respondent also argues that a conservation easement has no legal effect until it is recorded.  Respondent points to NYECL sec. 49-0305(4) (McKinney Supp. 2017), which provides:  "An instrument for the purpose of creating, conveying, modifying or terminating a conservation easement shall not be effective unless recorded."  On this basis respondent argues that the warehouse was not subject to legally enforceable restrictions, as required by section 1.170A-14(g)(1), Income Tax Regs., at any time in 2004, and that therefore the

---

[5]N.Y. Envtl. Conserv. Law (NYECL) tit. 49 (McKinney 2008) governs conservation easements.  We will refer to these statutes collectively as title 49 of the NYECL.

**[*8]** partnership is not entitled to a deduction for 2004 attributable to donation of the easement.

In response petitioner argues that the easement is not a conservation easement because the definition of conservation easement requires that the restriction be "created under * * * the provisions of this title", NYECL sec. 49-0303(1), and the deed did not reference title 49 of the NYECL nor did the partnership intend to create the easement under that title. More fundamentally, petitioner points to NYECL sec. 49-0309 (McKinney 2008), which provides: "This title shall not affect any interests or rights in real property which are not conservation easements, and shall not affect the rights of owners to convey any interests in real property which they could now create under existing law without reference to the terms of this title."

Petitioner argues that--whether or not the easement is also a conservation easement--the just-quoted language of NYECL sec. 49-0309 allows owners of property to convey any interest that could have been conveyed before title 49 was enacted. Petitioner contends that by delivery of the deed of easement to NAT, one such common law interest was created--namely, a restrictive covenant. Restrictive covenants are generally effective in New York upon delivery of a valid deed. N.Y. Real Prop. Law sec. 244 (McKinney 2006).

**[*9]** III.     Zarlengo, Rothman, and Mecox

This Court addressed substantially identical facts and arguments in Zarlengo v. Commissioner, T.C. Memo. 2014-161.  Just as in the present case, in 2004 the taxpayer in Zarlengo delivered a deed of easement to NAT which was intended to grant an easement on a building in New York.  NAT failed to record the deed until a later year.  The deed in Zarlengo and the deed in this case are nearly identical in all relevant respects.  In Zarlengo we found that the deed was effective on the date it was recorded, not the date it was delivered.  See also Rothman v. Commissioner, T.C. Memo. 2012-163 (reaching the same result), supplemented by T.C. Memo. 2012-218.

Moreover, petitioner's arguments have recently been addressed at length in Mecox Partners LP v. United States, 117 A.F.T.R.2d (RIA) 2016-593, 2016 WL 398216, at *5-*7 (S.D.N.Y. 2016), which also involves facts nearly identical to those in this case.  In 2004 the plaintiff in Mecox delivered to NAT a deed of easement (which was nearly identical to the deed in this case) intended to grant a facade easement on a building in New York.  NAT failed to record the deed until a later year.  The District Court found that the deed was not effective until it was recorded and denied the deduction claimed by the plaintiff.

**[\*10]** Petitioner contends that <u>Zarlengo</u>, <u>Rothman</u>, and <u>Mecox</u> were all wrongly decided. In particular, petitioner believes that these cases all misconstrued title 49 of the NYECL and failed to consider relevant law which, according to petitioner, would treat the conservation easement as being protected in perpetuity from the date of the transfer of the easement deed even though it was not recorded until a later year.

We disagree. <u>Zarlengo</u>, <u>Rothman</u>, and <u>Mecox</u> were not wrongly decided. To the contrary, we believe that these closely analogous cases compel the conclusion that the partnership is not entitled to a deduction for 2004 for contributing the easement. Nevertheless, for the sake of completeness we address below in greater detail petitioner's key arguments against these earlier cases, in particular as the arguments relate to: (1) whether the deed was legally effective so as to convey a property interest in 2004 and (2) whether the failure to record the deed in 2004 caused the easement to fail the perpetuity requirements of section 170(h)(2)(C) and (5)(A).

IV.  <u>Effectiveness of the Deed in 2004</u>

A.  <u>Recording Requirement for Conservation Easements Under N.Y. Law</u>

As previously noted, NYECL sec. 49-0305(4) provides: "An instrument for the purpose of creating, conveying, modifying or terminating a conservation

**[*11]** easement shall not be effective unless recorded." Under a plain reading of this statute, if an instrument is intended to create a conservation easement, it has no effect until and unless it is recorded, as held in Zarlengo, Rothman, and Mecox.

Petitioner relies on O'Mara v. Town of Wappinger, 485 F.3d 693, 699 (2d Cir. 2007), for the proposition that conservation easements are effective against the grantor upon delivery and against successors in interest only after the deed is recorded.[6] The taxpayer made the same argument in Mecox, 2016 WL 398216, at *7. Rejecting this argument, the District Court in Mecox explained why the taxpayer's reliance on O'Mara was misplaced:

> The Second Circuit [in O'Mara] was merely observing that other New York statutes "in other land use contexts" do require "restrictions to be recorded in order to be enforceable against subsequent purchasers." Thus not only is the language cited by Mecox dicta, but it fails to indicate that recordation is unnecessary for a conservation easement to be effective--all it says is that recordation is necessary for

---

[6]In O'Mara v. Town of Wappinger, 485 F.3d 693, 699 (2d Cir. 2007), the legal issue--which had nothing to do with conservation easements--was whether zoning restrictions imposed through a subdivision plat were enforceable against subsequent purchasers. The statutory sections governing the zoning restrictions at issue in O'Mara were silent regarding enforceability against successors in interest. As part of its decision to certify the question to the New York Court of Appeals, the court in O'Mara noted: "This silence is particularly notable when contrasted with New York law in other land use contexts that requires restrictions to be recorded in order to be enforceable against subsequent purchasers." The court then cited three New York State statutes, including NYECL sec. 49-0305(4) (McKinney Supp. 2017).

[*12] a conservation easement to be effective against subsequent purchasers. [Citations and fn. ref. omitted.]

Id.

Consequently, under the plain terms of NYECL sec. 49-0305(4), if the deed was intended to convey a conservation easement, it was not effective until it was recorded. Zarlengo, Rothman, and Mecox all reach this same conclusion, and petitioner has not persuaded us that there is any reason for us to part ways with their holdings.

Petitioner argues that the deed was not intended to convey a conservation easement because the definition of conservation easement requires that the restriction be "created under * * * the provisions of this title", NYECL sec. 49-0303(1), and the partnership did not reference title 49 of the NYECL nor did petitioner intend to create the easement under that title. Petitioner argues that the deed instead created a common law property interest. We disagree for the reasons explained below.

As New York's highest court has stated:

At the outset we note that the policy of * * * [New York State] law is to favor the free and unobstructed use of realty and that covenants restricting the use of property will be strictly construed against those seeking to enforce them. The burden of proof is on the party endeavoring to enforce a restrictive covenant and must be met by more than a doubtful right. Only where it has been established

**[\*13]** by clear and convincing proof will our court impose such a restriction. * * *

Huggins v. Castle Estates, Inc., 330 N.E.2d 48, 51 (N.Y. 1975) (citations omitted).

Under New York State law, "[e]very instrument creating [or] transferring * * * an estate or interest in real property must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law." N.Y. Real Prop. Law sec. 240(3) (McKinney 2006); see also Mecox, 2016 WL 398216, at \*6; Mau v. Schusler, 1 N.Y.S.3d 609, 612 (App. Div. 2015). "The 'intent' to which the statute refers is the objective intent of the parties as manifested by the language of the deed; unless the deed is ambiguous, evidence of unexpressed, subjective intentions of the parties is irrelevant." Mecox, 2016 WL 398216, at \*6; Mau, 1 N.Y.S.3d at 612 (citation omitted).

Consequently, petitioner's arguments regarding the partnership's lack of a subjective intent to create a conservation easement are unavailing unless the deed is ambiguous.[7] The deed is not ambiguous.

---

[7]For example, petitioner argues that, because the words "conservation easement" were used by NAT in similar deeds in States other than New York, it is clear that the partnership's intent was not to create the deed at issue in this case under the provisions of title 49 of the NYECL. But we cannot consider these other deeds because, as we shall discuss, the partnership's deed is not ambiguous.

(continued...)

**[\*14]** The deed that the partnership delivered to NAT is titled "Conservation Deed of Easement" and references itself as such repeatedly throughout the document. For example, it states: "The Grantor does hereby grant and convey to the Grantee, TO HAVE AND TO HOLD, an Easement in gross, in perpetuity, in, on, and to the Property, the Building and the Facades, being an Open Space and Architectural Facade <u>Conservation Easement</u> on the Property." (Emphasis added.) The deed continues by listing rights and conditions:

> [T]he Grantor will not undertake nor suffer nor permit to be undertaken with respect to the Protected Facades:
>
> 1.      any alteration, construction or remodeling of existing exterior improvements on the Protected Facades, or the placement thereon or (on the Building) of signs or markers that would materially alter or change the appearances of the Facades[.]

The deed also explains the purpose of the conveyance:

> It is the intent of the parties that the Facades of the  * * * [warehouse] that are visible from the street level on the opposite sides of Tenth

---

[7](...continued)
And even if we were to consider these other deeds, it is unclear why they would indicate the partnership's (or NAT's) intent in this case. Many of these documents list the name of a State or group of States in small print at the bottom, showing that specific form documents were used for specific States. The only reason for having different form documents for different States would be to comply with differing provisions of law in those States, which would suggest that the document used in the present case was drafted with New York State law in mind and not, as petitioner suggests, that these other documents show some sort of generalized usage.

[*15] Avenue, West 25th Street and West 26th Street are protected by this Easement so that they remain essentially unchanged and in full public view in perpetuity.  The term "Facades" as used herein consists of all exterior surfaces of the improvements on the  * * * [warehouse], including all walls, roofs, and chimneys * * *.

The portions of the deed listed above, like the deed read as a whole, manifest clear objective intent to create an easement or other property interest which "limits or restricts development" of the warehouse facades "for the purpose of preserving or maintaining the scenic, * * * historic, * * * architectural * * * character, [or]  significance" of the warehouse, within the meaning  of NYECL sec. 49-0303(1).  Whatever the partnership's subjective intent might have been, the deed--viewed objectively--shows the parties' intent to create an easement or other property interest that "fits squarely within" the definition of a conservation easement under New York State law.  See Mecox, 2016 WL 398216, at *6.

Additionally, and contrary to petitioner's suggestion, the deed defies a simple characterization at common law.  It grants an easement to enter the property for inspection and to repair violations of covenants in the deed.  It sets out a restrictive covenant prohibiting changes to the external facades.  The deed also requires that the partnership and its successors in interest maintain the property--an affirmative covenant at common law.  This mix of traditional common law devices is precisely what NYECL sec. 49-0303(1) contemplates

[*16] when it defines a conservation easement as an "easement, covenant, restriction or other interest in real property". See John C. Partigan, "New York's Conservation Easement Statute: The Property Interest and Its Real Property and Federal Income Tax Consequences", 49 Alb. L. Rev. 430, 435 (1984-1985) ("The significance of this definition is that all three common law concepts[--easements, covenants, and deed restrictions--]may be integrated into a single grant.").

In sum, the partnership's deed repeatedly references itself as a "Conservation Deed of Easement", it purports to do what a conservation easement would do, and it grants exactly the mix of easements, restrictions, and affirmative responsibilities that a conservation easement would.[8] Consequently, we conclude that the deed is not ambiguous and is best read as intending to convey a

---

[8]Petitioner argues that the deed does not objectively describe a conservation easement because it states that NAT has the rights: (1) to enter and inspect; (2) to sue for enforcement; (3) to collect costs and attorney's fees in any enforcement action; and (4) to enter and correct violations of the deed. Petitioner's argument appears to be that because the deed provides for enforcement on its face, it does not "rely on the enforcement mechanism" provided by title 49 of the NYECL, and therefore it conveys something other than a conservation easement. We disagree. Nothing about the deed's recitation of these rights suggests that the deed was intended to convey anything other than a conservation easement. Furthermore, the right to enter and inspect is guaranteed for conservation easements under NYECL sec. 49-0305(6) (McKinney Supp. 2017), and if anything the presence of this right in the deed supports the conclusion that this is a conservation easement under title 49 of the NYECL.

**[\*17]** conservation easement under title 49 of the NYECL.  Accord Mecox, 2016

WL 398216; Zarlengo v. Commissioner, T.C. Memo. 2014-161.

    B.  Enforceability of Easement as Common Law Interest

Petitioner also argues that, even if we find that the intent behind the deed

was to convey a conservation easement, the deed was also simultaneously

enforceable as a common law interest from the time of delivery.

Under New York State law, "[c]onservation easements are of a character

wholly distinct from the easements traditionally recognized at common law and

are excepted from many of the defenses that would defeat a common-law

easement, including that it be appurtenant to an interest in real property."  Argyle

Farm & Props., LLC v. Watershed Agric. Council, 24 N.Y.S.3d 436, 439 (App.

Div. 2016) (quoting Stonegate Family Holdings, Inc. v. Revolutionary Trails, Inc.,

900 N.Y.S.2d 494, 499 (App. Div. 2010)); see NYECL sec. 49-0305(5); Friends of

Shawangunks, Inc. v. Knowlton, 476 N.E.2d 988 (N.Y. 1985).  These cases

support the conclusion that a conservation easement created under title 49 of the

NYECL is separate and distinct from anything created at common law.

Furthermore, petitioner's argument that the deed created or attempted to

create two different but entirely coextensive interests--a conservation easement

and a separate restrictive covenant at common law--fails to take into account the

**[*18]** recording requirement in NYECL sec. 49-0305(4): "An instrument for the purpose of creating, conveying, modifying or terminating a conservation easement <u>shall not be effective unless recorded</u>." (Emphasis added.)  If petitioner's argument were correct, every deed intending to create a conservation easement under title 49 of the NYECL would also simultaneously create other interests at common law, which would all be enforceable between the parties and their successors in interest at common law (assuming that no superior interest should arise).  Consequently, all conservation easements would be effective between the parties and their successors at common law from the date of delivery, and the just-quoted recording requirement would have no meaningful effect.  Since we must construe statutes to have some effect, we must reject petitioner's argument that the deed created common law property interests.

Moreover, petitioner's argument ignores a fundamental aspect of New York State law:  "Restrictive covenants * * * are construed strictly * * * against those who formulate or seek to enforce them and doubts and ambiguities are resolved in favor of free use of the property so that the restrictions are narrowed rather than broadened in their application."  <u>Silverstein v. Shell Oil Co.</u>, 337 N.Y.S.2d 442, 445 (App. Div. 1972) (citing <u>Single v. Whitmore</u>, 122 N.E.2d 918, 922 (N.Y. 1954), <u>Buffalo Acad. of Sacred Heart v. Boehm Bros.</u>, 196 N.E. 42, 44 (N.Y.

[*19] 1935), and <u>Clark v. Devoe</u>, 26 N.E. 275, 276 (N.Y. 1891)). "[I]t is established that where a restrictive agreement is reasonably capable of two constructions, the construction which limits the restriction, rather than the one which extends it, should be adopted." <u>Single</u>, 122 N.E.2d at 922; <u>Schoonmaker v. Heckscher</u>, 157 N.Y.S. 75, 77 (App. Div. 1916) ("But if * * * the language used is reasonably capable of two constructions, the one that limits, rather than the one that extends, the restriction should be adopted, for the reason that the law will always favor the free and unrestricted use of property, and therefore all doubts and ambiguities must be resolved in favor of the natural right to the free use and enjoyment of property and against restrictions.").

Having carefully reviewed the deed, we conclude that while it clearly manifests an intention to create a conservation easement, it is ambiguous as to whether there was any intent--from an objective viewpoint--to create a common law restrictive covenant alongside the conservation easement. Because New York State law requires that ambiguity be construed against enforcement, we conclude that this deed did not create a common law restrictive covenant.

Consequently, no property interest was conveyed in 2004, there was no qualified real property interest in 2004, and the partnership is not entitled to a

[*20] section 170 deduction for 2004 for donation of a qualified conservation contribution.

V.     Perpetuity Requirements

Even if we were to assume, for the sake of argument, that the deed effectively created an easement or, as petitioner argues, a restrictive covenant at common law, we would nevertheless conclude that the perpetuity requirements of section 170(h)(2)(C) and (5)(A) are not met because the deed was not recorded in 2004. This provides another, independently sufficient reason why the partnership is not entitled to a deduction for donation of the easement in 2004.

Petitioner argues--with the benefit of hindsight--that it was unlikely that the deed would not be enforceable (or would become unenforceable) at common law by NAT and its successors in interest against the partnership and its successors in interest. However, section 1.170A-14(g)(3), Income Tax Regs., provides:

> A deduction shall not be disallowed under section 170(f)(3)(B)(iii) and this section merely because the interest which passes to, or is vested in, the donee organization may be defeated by the performance of some act or the happening of some event, if on the date of the gift it appears that the possibility that such act or event will occur is so remote as to be negligible. See paragraph (e) of § 1.170A-1. * * * [Emphasis added.]

This regulation makes clear that the relevant date for the purpose of testing the perpetuity requirement is the date of the alleged transfer. See, e.g., Graev v.

[*21] Commissioner, 140 T.C. 377, 393 (2013).  And the regulations do not ask whether it is likely that a particular event would defeat the transfer.  Rather, the regulations ask whether "it appears that the possibility that such act or event will occur is so remote as to be negligible".  Sec. 1.170A-14(g)(3), Income Tax Regs.

In Graev v. Commissioner, 140 T.C. at 393-394, we said:

In prior cases, we have defined "so remote as to be negligible" as "'a chance which persons generally would disregard as so highly improbable that it might be ignored with reasonable safety in undertaking a serious business transaction.'" * * * Stated differently, it is "a chance which every dictate of reason would justify an intelligent person in disregarding as so highly improbable and remote as to be lacking in reason and substance." * * * [Citations omitted.]

Therefore, donation of the easement is a qualified conservation contribution only if the restriction on the warehouse was legally enforceable in perpetuity by NAT and its successors in interest, see sec. 1.170A-14(c)(2), Income Tax Regs., against the partnership and its successors in interest, and the risk of any event which would prevent such enforcement must be "so highly improbable that it might be ignored with reasonable safety in undertaking a serious business transaction", Graev v. Commissioner, 140 T.C. at 393--all as of the date of donation.

As of the date of the donation, at least two future events were possible, either of which, under certain circumstances, could have prevented enforcement of the restrictions on the warehouse:  (1) transfer by NAT of the benefits of the deed

**[*22]** to a successor in interest and (2) sale (or mortgage) of the warehouse by the partnership.

A. Transfer by NAT

Legal entities are often dissolved and their rights and affairs transferred to other entities. See, e.g., Urgent Care Nurses Registry, Inc. v. Commissioner, T.C. Memo. 2016-198, at *5. And the possibility that the donee's rights might be transferred is specifically addressed at section 1.170A-14(c)(2), Income Tax Regs., which provides restrictions governing the type of entity to which the donee's rights may be transferred. In fact, the partnership's deed allows for such a transfer, subject to certain conditions. We do not believe that the possibility that NAT might someday transfer, assign, or otherwise convey its rights in the deed to another entity was so remote as to be negligible.

Petitioner argues that, although the deed was not effective as a conservation easement under title 49 of the NYECL, it was effective at common law as a restrictive covenant. But for petitioner's argument to succeed, any such common law interest (whether an easement, a covenant, or something else) would have to be enforceable in perpetuity by successors to NAT.

As a matter of law, easements in gross--i.e., easements the benefit of which is held personally rather than as an incident to ownership of a particular parcel of

**[\*23]** land--are not enforceable in New York by successors to the holder of the benefit (NAT here) because they are not assignable or inheritable.  See, e.g., Gross v. Cizauskas, 385 N.Y.S.2d 832, 834 (App. Div. 1976) ("This easement * * * must be in gross and, therefore, is neither assignable nor inheritable[.]"); Sturges v. Tetlow, 350 N.Y.S.2d 226, 227 (App. Div. 1973), aff'd without published opinion, 322 N.E.2d 272 (N.Y. 1974); Banach v. Home Gas Co., 199 N.Y.S.2d 858 (Sup. Ct. 1960), aff'd, 211 N.Y.S.2d 443 (App. Div. 1961);[9] see also Philip Weinberg, et al., 9A N.Y. Practice Series - Environmental Law and Regulation in New York, sec. 12.3 (2016 update to the 2d ed.) ("Restricting property through the use of deed covenants has several limitations, both legal and practical.  * * * As discussed above, if the grantor retains no land, or disposes of the remaining land, the right to enforce the restrictions (assuming the grantor has any interest in doing so) is neither inheritable nor assignable, and will terminate with the grantor's death.").

---

[9]Banach v. Home Gas Co., 199 N.Y.S.2d 858, 861-862 (Sup. Ct. 1960), lists two possible exceptions to this general rule:  (1) a profit a prendre, which is a right to take a part of the soil or product thereof from the land of another and (2) easements in gross of a commercial character, which the court defined as an easement where "the use authorized by it results primarily in economic benefit rather than personal satisfaction."  The property interest at issue in this case is clearly not a profit a prendre; and we have found no authority to suggest that a conservation easement is commercial in character (in fact, the use authorized by a conservation easement seems clearly noneconomic).

**[\*24]** We have not found, nor has petitioner cited, any case where a New York court held a covenant in gross enforceable at common law by a successor to the original benefited party.[10]  In fact, New York's Court of Appeals has said that "no right to enforce even a restrictive covenant has been sustained in this State where the plaintiff did not own property which would benefit by such enforcement". Neponsit Prop. Owners' Ass'n v. Emigrant Indus. Sav. Bank, 15 N.E.2d 793, 798 (N.Y. 1938); see also Place v. Cummiskey, 176 N.Y.S.2d 806, 809 (App. Div. 1958); New York v. Turnpike Dev. Corp., 233 N.Y.S.2d 887, 892 (Sup. Ct. 1962). Consequently, we conclude that the partnership's deed would not be enforceable by NAT's successors at common law because NAT's easement is not appurtenant to any interest in property.

There is one case (and as far as we can tell, only one) where a New York court enforced the terms of a covenant in gross using its equitable power.  See Bill

---

[10]The sole possible exception involves a class of cases--not at issue here--where there was a common plan or scheme to subdivide an original property into residential plots and a homeowner's association sued for enforcement of reciprocal interests (sometimes referred to as implied reciprocal servitudes).  But even in those cases, the benefit of the covenants is an incident to property ownership; that is, New York courts have held, not that a covenant in gross is enforceable by successors to the original benefit holder, but that a homeowner's association has standing to sue for owners of homes in subdivisions.  See, e.g., Neponsit Prop. Owners' Ass'n v. Emigrant Indus. Sav. Bank, 15 N.E.2d 793, 798 (N.Y. 1938). Such cases have little relevance to the matter presently before us.

[*25] <u>Wolf Petroleum Corp. v. Chock Full of Power Gasoline Corp.</u>, 344 N.Y.S.2d 30 (App. Div. 1973), <u>rev'g</u> 333 N.Y.S.2d 472 (Sup. Ct. 1972). In that case, a gasoline distributor sold land on which the buyer intended to build a gas station. The sale was conditioned on a requirements agreement that the buyer "and 'any subsequent owner, tenant, subtenant or occupant,'" would purchase all gasoline products from the seller for 10 years. <u>Id.</u> at 31. The requirements agreement was recorded and "provided for termination after 10 years 'or sooner in accordance with any written agreement between the parties.'" <u>Id.</u>

A gas station was built, leased, and operated under the terms of the requirements agreement. <u>Id.</u> Six years later, the property was sold once more to the <u>Bill Wolf</u> defendant, who purchased the property despite having negotiated unsuccessfully for modification or termination of the requirements contract. <u>Id.</u> The defendant also refused to assume the requirements agreement as a contract obligation. <u>Id.</u> The plaintiff, a successor in interest to the gasoline distributor, sued to enforce the requirements agreement as an affirmative covenant. <u>Id.</u>

The New York Supreme Court held that the covenant was not enforceable at law because a requirements agreement does not touch and concern the land. But over a dissent, the Appellate Division held that the requirements agreement was enforceable in equity "since this requirements [agreement] * * *, which is of

**[*26]** reasonable duration, constitutes an equitable obligation which is enforceable against * * * [the defendant] as a taker with actual notice." Id. at 32.[11]

In short, the one covenant in gross we have found that was enforced at equity in New York had only four years left to run and was enforced against a defendant who had purchased with actual notice of the obligation. Given New York's policy of "favor[ing] the free and unobstructed use of realty", which requires courts to "strictly" construe property restrictions "against those seeking to enforce them"; and considering that "[t]he burden of [clear and convincing] proof is on the party endeavoring to enforce a restrictive covenant and must be met by more than a doubtful right", Huggins v. Castle Estates, Inc., 330 N.E.2d 48, 51 (N.Y. 1975), we think it is highly unlikely, as a matter of law, that New York's courts would enforce the partnership's deed at equity in perpetuity, as required by section 170(h) and section 1.170A-14(g), Income Tax Regs.

---

[11]The dissent criticized the majority's application of equity, noting: "[I]n every case in this jurisdiction in which the doctrine of equitable servitudes has been applied, the equitable incorporeal interest in the burdened land has been appurtenant to a dominant parcel of benefited land. No authority exists for enforcement of equitable servitudes where the reciprocal benefit is in gross." Bill Wolf Petroleum Corp. v. Chock Full of Power Gasoline Corp., 344 N.Y.S.2d 30, 33 n.* (App. Div. 1973) (Brennan and Bejamin, JJ., dissenting) (citations omitted), rev'g 333 N.Y.S.2d 472 (Sup. Ct. 1972).

**[\*27]**  Finally, there is further support for our conclusion in the fact that title 49 of the NYECL was enacted to overcome this barrier to enforcement (among others). See NYECL sec. 49-0305(5) ("It is not a defense in any action to enforce a conservation easement that * * * [the conservation easement] is not appurtenant to an interest in real property"); Philip Weinberg, Editor's Notes to NYECL sec. 49-0301 (McKinney 2008) ("This title [49 of the NYECL], of major significance, was adopted in 1983 to enable not-for-profit conservation groups to obtain easements to protect scenic and historic areas, open space, and other environmental resources.  At common law easements did not run with the land and therefore were not binding on subsequent owners, unless "appurtenant"--benefitting contiguous property owned by the holder of the easement.  This statute abolished that anachronistic vestige of ancient English landholding doctrine.").  See generally John C. Partigan, "New York's Conservation Easement Statute:  The Property Interest and Its Real Property and Federal Income Tax Consequences", 49 Alb. L. Rev. 430 (1985) (discussing the various impediments to enforcement of property interests before enactment of title 49 of the NYECL).

For all these reasons, therefore, we hold that, as of the date of the easement donation, the risk that the deed would be unenforceable by successors in interest to NAT was not "so remote as to be negligible."

**[\*28]**  B.  <u>Sale by Petitioner</u>

Similarly, we do not think that, as of the date of the donation, the risk that NAT's interest in any easement could have been defeated by a subsequent purchaser was so remote as to be negligible

Under N.Y. Real Prop. Law sec. 291 (McKinney 2006), a purchaser of real property who pays value for the property and does not have notice of an unrecorded interest in the property when the property is purchased will take the property free of that unrecorded interest, provided that the purchaser's interest is recorded before the unrecorded interest is recorded.  <u>See, e.g.</u>, <u>Vanderbilt Brookland, LLC v. Vanderbilt Myrtle, Inc.</u>, 48 N.Y.S.3d 433, 437 (App. Div. 2017).  Therefore, the relevant question is whether--as of the date of donation--there was a nonnegligible possibility that a recorded sale might have occurred without notice of the easement deed and before it was recorded.  If so, then the perpetuity requirements are not met.

Petitioner has not argued or set forth facts to show that (1) the partnership was under any obligation not to sell the warehouse or that (2) NAT was under any obligation to record the easement deed.  Therefore, it was quite possible that a sale could have occurred at some point after donation of the easement but before the

[*29] easement deed was recorded.[12]  And given that property sales are almost always recorded, the possibility of a recorded sale before the easement deed was recorded was not so remote as to be negligible.[13]

Petitioner contends that if the partnership had sold the property it would have been obliged to inform the buyer that the easement had been conveyed. Petitioner argues that if the partnership had not met this obligation to the buyer, it would have been subject to liability for fraud.  Consequently, petitioner claims that the likelihood of a sale without notice was so remote as to be negligible.

To begin with we are unaware of any reason a seller could not contract around any duty to disclose by contracting to convey the warehouse via a bargain

_____

[12]Petitioner argues that Zarlengo v. Commissioner, T.C. Memo. 2014-161, is factually distinguishable because the taxpayer in that case was actively marketing the property at issue before the deed in that case was recorded, whereas in the present case petitioner represents that the warehouse has never been offered for sale.  But as we noted earlier, under sec. 1.170A-14(g)(3), Income Tax Regs., we are to test the possibility--as of "the date of the gift"--that the donee's rights might be defeated.  That is, the question we must consider is whether the property was prospectively marketable in 2004, not whether it happens to have been subsequently marketed.  The fact that the warehouse has not been marketed since 2004 does not mean that in 2004 the likelihood of a sale was so remote as to be negligible.

[13]For one example of a similar sequence of events, see 21 Park Place LLC v. Granado Serv., Inc., 29 N.Y.S.3d 850 (table) (Sup. Ct. 2015), where a sale was recorded before a tax lien that predated the sale was recorded.

**[\*30]** and sale deed without covenants against grantor or via a quitclaim deed,[14] in a sale contract containing a merger clause, disclaiming representations, and promising only insurable title.[15] But assuming for the sake of argument that an effectively inalienable duty to disclose the easement deed did fall on the partnership, it still cannot prevail: The possibility of inadvertent failure to disclose is still not so remote as to be negligible.

Section 170(h) requires restrictions that are legally enforceable by NAT and its successors <u>in perpetuity</u>. As time passes, memories fade; partnerships change hands; documents are lost. Petitioner's argument requires not only that the partnership remember to inform a purchaser about the easement deed but also that such a purchaser remember to inform its successor, and so on, for so long as the warehouse should stand (or at least until NAT recorded the easement deed, which might never happen). Title insurance and the recording act, N.Y. Real Prop. Law

---

[14]<u>See</u> N.Y. Real Prop. Law sec. 258, schedules C, D, G (McKinney 2017); 4-37 Warren's Weed New York Real Property, sec. 37.04 (2017).

[15]New York State law allows parties to contract around a buyer's default entitlement to marketable title by contracting for delivery of insurable title, rather than marketable title. <u>See, e.g.</u>, <u>O'Mara v. Town of Wappinger</u>, 879 N.E.2d 148, 149 (N.Y. 2007); <u>Donerail Corp. N.V. v. 405 Park LLC</u>, 958 N.Y.S.2d 645 (table) (Sup. Ct. 2011), <u>aff'd</u>, 952 N.Y.S.2d 137 (App. Div. 2012); <u>Creative Living, Inc. v. Steinhauser</u>, 355 N.Y.S.2d 897, 900-901 (Sup. Ct. 1974).

**[*31]** sec. 291, protect buyers against such failures to disclose, indicating that the possibility of such failures is not so remote as to be negligible.

For all of these reasons, therefore, we conclude--consistent with our holding in Zarlengo--that the risk that the partnership would fail to inform a purchaser about the easement deed, and that such a purchaser would record the sale before the easement deed was recorded, was not so remote as to be negligible.

C. Conclusion

In sum, as of the date of the easement donation in 2004 there was a possibility--which was not so remote as to be negligible--that either (1) the benefits of the easement deed would be unenforceable by NAT's successors, or that (2) someone might purchase the warehouse without notice of the easement and record that conveyance before the easement was recorded. Therefore, the perpetuity requirements of section 170(h)(2)(C) and (5)(A) were not met for 2004 because neither the use restriction nor the conservation purpose of the conservation easement was protected in perpetuity as of the date of donation.[16]

---

[16]Petitioner also argues that the conservation purpose is protected in perpetuity because the deed provides that the partnership (or its successors) must pay to NAT (or its successors) a portion of the proceeds of any sale following extinguishment of the conservation easement by judicial decree. See sec. 1.170A-14(g)(6), Income Tax Regs. Judicial extinguishment follows an "unexpected change in the conditions surrounding the property" which makes "impossible or

(continued...)

**[\*32]** The partnership is not entitled to a deduction for 2004 for contribution of the easement.

Consequently, we will grant respondent's motion for partial summary judgment.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.

---

[16](...continued) impractical the continued use of the property for conservation purposes". <u>See</u> <u>id.</u> But if the deed conveying the easement is ineffective or unenforceable, there is nothing to extinguish. Our reasons for holding against the partnership are all related to the ineffectiveness or potential for unenforceability of its deed. Therefore petitioner's proceeds argument fails because the proceeds clause of the deed applies only in the event of judicial extinguishment; furthermore, if the interest is ineffective or unenforceable, the proceeds clause would also be ineffective or unenforceable.